LUIS RAÚL RODRÍGUEZ, demandante y apelado, *v.* NELSON WARD, demandado y apelante.

Número 10298.

*Sometido:* 9 de febrero de 1951. *Resuelto:* 14 de mayo de 1953.

*Diego O. Marrero* y *Federico Valladares,* abogados del apelante; *Eduardo Urrutia Martorell,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión del tribunal.

El arquitecto Luis Raúl Rodríguez inició el presente pleito contra Nelson Ward en el antiguo Tribunal de Distrito de San Juan reclamando de éste la suma de $1,127.50 por concepto de honorarios profesionales. Alegó, en síntesis, el demandante que para febrero de 1947, y a solicitud del demandado, realizó estudios y preparó para éste planos para la edificación de un edificio de planta semialta y sótano, a construirse en un solar propiedad de dicho demandado en la "Urbanización Religiosa del Sagrado Corazón", de Santurce, y que éste, a pesar de sus requerimientos, no le había satisfecho los honorarios devengados por su trabajo, ascendentes a la suma arriba indicada. El demandado admitió algunos de los hechos, pero negó sustancialmente la reclamación del demandante, alegando, por su parte, que los planos preparados por éste resultaron inservibles por no conformarse a sus instrucciones y que al negarse dicho demandante a ajustar los mismos al presupuesto de $12,000 a $13,000 previamente señaládole como límite para el coste de la construcción, hizo imposible por sus propios actos la utilización de dichos planos, relevando en esa forma al demandado de la obligación de pagarle por su trabajo.

Luego de un juicio en sus méritos el tribunal a quo declaró con lugar la demanda y condenó al demandado al pago de la suma de $1,040.23 más intereses, costas y $200 para honorarios de abogado.

No conforme con dicha sentencia interpuso el demandado el presente recurso de apelación, y en un extenso alegato radicado en apoyo del mismo sostiene que el tribunal a quo cometió error (1) al no establecer como conclusión de hecho que el demandante no demostró la existencia de un contrato de arrendamiento de servicios a precio cierto y fijo; (2) al establecer la conclusión de que existía un convenio de servicios entre demandante y demandado, en virtud del cual éste se obligó a pagar a aquél la suma de $1,040.23, la cual suma fijó el tribunal abitrariamente, sin prueba para ello; (3) al hacer caso omiso de la defensa levantada por el demandado en el sentido de que el demandante perdió su derecho a recobrar al no seguir las instrucciones del demandado en el sentido de que el coste de la construcción para la cual iba a preparar los planos no debía exceder de $12,000 a $13,000; (4) al no establecer como conclusión de hecho que a lo único que se obligó el demandado fué a pagarle al demandante el 3 por ciento del costo de la obra siempre que el presupuesto no excediera de $12,000 a $13,000; y (5) al dictar sentencia contra el demandado y condenarle al pago de honorarios de abogado.

█ Hagamos primeramente un breve resumen de la prueba que tuvo ante sí el tribunal a quo.

## Prueba del Demandante

La prueba del demandante fué al efecto de que Nelson Ward, dueño de un solar en la "Urbanización Religiosa del Sagrado Corazón", de Santurce, obtuvo sus servicios profesionales para que le preparara unos anteproyectos y planos para una casa-residencia a ser construída en dicho solar. Según croquis preparado por el demandado, al cual debían conformarse los planos a hacerse por el demandante, la casa sería

de una sola planta, con 4 dormitorios, sala, comedor, una oficina y dos baños. Antes de hacer los planos el demandante Rodríguez fué con el demandado a examinar el solar y al inquirir del ingeniero a cargo de la Urbanización si la calle a construirse frente a dicho solar quedaría a nivel del mismo, dicho ingeniero contestó en la afirmativa. El demandante preparó un anteproyecto que fué del agrado del demandado, a excepción del terminado, que su esposa quería fuera de tipo español. Aunque el demandante calculó a dicha construcción un coste entre $12,000 y $15,000, el demandado le indicó que a él le costaría menos ya que siendo empleado de la Ready Mix Concrete, Inc. podía conseguir el hormigón al costo y además formaletas y otros útiles sin costo alguno.

Cuando el demandante se disponía a preparar los planos finales, Ward le llamó para indicarle que no continuara con dichos planos ya que la calle, la cual estaba ya hecha, quedaba sobre el nivel del solar. Le instruyó que preparara nuevos planos para una casa que tuviera las mismas comodidades de las que le había hablado anteriormente, pero que se levantara sobre columnas, aprovechando el espacio de abajo para construir el garaje y el cuarto de servicio. Le entregó un segundo croquis para que ajustara sus nuevos planos a él. Según dicho croquis, además de la planta superior que—con excepción de la oficina—tendría las mismas comodidades antes convenidas, se haría un sótano que contendría el garaje, el cuarto de servicio, la oficina y otras dependencias. Rodríguez le informó a Ward que esa nueva casa le costaría más de lo que había pensado originalmente, que su costo ascendería a cerca de $22,000 y que aún teniendo el demandado las facilidades que alegaba, no le saldría por menos de $17,000. Ward le indicó que no se preocupara y continuara con los planos.

El demandante utilizó los servicios de dos ingenieros especializados en las fases técnicas de los planos, pagando a ese efecto al arquitecto José Serrano Anglada la cantidad de $120 por la confección del plano estructural y $85 al inge-

niero Alberto Vázquez Robles por el plano de las instalaciones eléctricas.

Los planos finales fueron entregados al demandado. Días después, éste volvió donde el demandante para que le firmara unas especificaciones que habría de someter, junto con una solicitud de permiso para construcción, al Negociado de Permisos. De primera intención el demandante se negó a autorizar dichas especificaciones por no haberlas hecho, pero después de revisarlas y determinar que estaban correctas, las firmó. Acompañando los planos y las especificaciones el demandado sometió al Negociado de Permisos un presupuesto de cerca de $10,000 como costo de la proyectada obra. Dicho Negociado le informó, sin embargo, que estimaba el valor de la construcción en una suma mayor de $20,000. El demandado insistió en una rebaja de dicho presupuesto, sosteniendo que debido a su situación peculiar el costo de la misma reduciría por mucho lo calculado por esa Oficina. Al insistir el Negociado de Permisos en su estimado, el demandado retiró los planos, manifestando que en tal situación prefería no llevar a cabo la obra.

El demandante requirió el pago de sus honorarios al demandado, negándose éste a satisfacerlos alegando que el Negociado de Permisos le había informado que dichos planos no servían por no llenar las exigencias mínimas requeridas. Al recurrir el demandante al Negociado fué allí informado que los planos eran aceptables, pero que el presupuesto sometido por el demandado era considerablemente inferior al calculado por esa agencia, por lo cual no podía extenderse el permiso de construcción hasta tanto no se enmendara dicho presupuesto.

### Prueba del Demandado

La prueba del demandado tendió a demostrar que allá para el mes de febrero de 1947 y por sugestiones del ingeniero Francisco M. Rexach, tuvo un cambio de impresiones con el demandante, quien para esa época trabajaba con la firma de Schimmelpfenning, Ruiz & González, habiéndole en-

cargado la preparación de un anteproyecto y de unos planos para la construcción de una casa de hormigón, de una planta, que constara de 4 habitaciones, sala, comedor, cocina, cuarto de baño principal y un cuarto de baño auxiliar, y un garaje con su cuarto de servicio anexo, para ser levantada en un solar del demandado en la "Urbanización Religiosa del Sagrado Corazón". Le advirtió que interesaba que el costo total de la construcción de dicha casa no excediera de $12,000 a $13,000. Se convino en que el demandante prepararía el anteproyecto y los planos y que el demandado prepararía las especificaciones, asesorándose para esto con el ingeniero Francisco M. Rexach. Se convino como honorarios una suma que no excedería de $400 por la preparación del anteproyecto y los planos, comprometiéndose el demandado a realizar todas las gestiones para conseguir la aprobación de los mismos.

Dos meses más tarde el demandante entregó al demandado el anteproyecto y los planos, advirtiendo el demandado que de acuerdo con éstos la casa quedaría a un nivel más bajo que la calle por no haber tenido en cuenta el demandante la situación del solar al prepararlos. En vista de ello el demandante sugirió al demandado que se aprovechara el desnivel existente para construir un sótano, dedicándose la planta principal a vivienda y haciendo el garaje y cuarto de servicio en dicho sótano, con lo que estuvo conforme el demandado a condición de que el presupuesto total no sobrepasara la suma de $12,000 a $13,000 ya anteriormente establecida. El demandante aseguró que se harían dichas variaciones para conformar los planos a la situación del terreno y de acuerdo con el presupuesto indicado. Al recibir el demandado dichos planos así modificados y someterlos a la aprobación del Negociado de Permisos, fué informado por un oficial de dicho Negociado que esa oficina estimaba el valor de la obra en proyecto en más de $25,000. En vista de que esta valorización duplicaba el presupuesto indicado por él, el demandado retiró la solicitud de permiso de construcción y pidió al demandante que modificara los planos para conformarlos al presupuesto

que se había establecido. A ello se negó dicho demandante enviándole una cuenta por la suma de $745.60. (¹)

Ante esa prueba, evidentemente contradictoria, correspondía al tribunal sentenciador dirimir ese conflicto, y al así hacerlo·a favor del demandante, no intervendremos en apelación con sus conclusiones sobre los hechos—que están sostenidas por la prueba que tuvo ante sí dicho tribunal—y en la apreciación de la cual no creemos que cometiera manifiesto error. En consecuencia, desestimamos los señalamientos de error tercero, cuarto y la primera parte del quinto, los cuales van dirigidos, en una u otra forma, a impugnar la apreciación de la prueba.

 Los señalamientos primero y segundo atribuyen al tribunal inferior haber cometido error al no establecer una conclusión de hechos al efecto de que el demandante "no demostró la existencia de un contrato de arrendamiento de servicios a precio cierto y fijo" y por haber concluído "que existió un convenio de arrendamiento de servicios entre el demandante y el demandado, en virtud del cual el demandado se obligó a pagar al demandante" la suma de $1,040.23, "cuya totalidad fijó el tribunal arbitrariamente, sin prueba para

---

(¹) La evidencia documental del demandante consistió de dos tarjetas acreditativas de que era miembro del Colegio de Ingenieros durante los años 1947 y 1948; los dos croquis hechos por el demandado; un anteproyecto para una casa de una sola planta con garaje y cuarto de servicio separados de la estructura principal, de fecha de 26 de febrero de 1947; un juego de planos finales de la "residencia para don Nelson E. Ward y Sra."; copias de cartas cursadas entre el demandante y el Negociado de Permisos; póliza núm. 21686 expedida por el Fondo del Seguro del Estado a favor de Nelson E. Ward con fecha de 6 de marzo de 1947.

La del demandado, de un documento titulado "Especificaciones Técnicas y Contrato para la construcción de la residencia del señor Nelson E. Ward, en el solar núm. 13 Urbanización Religiosa del Sagrado Corazón, Parada 26, Santurce," firmado por el demandante; solicitud de permiso de construcción a nombre del demandado y firmado por Francisco M. Rexach; documento titulado "Presupuesto para la construcción de residencia propiedad del Sr. Nelson E. Ward a construirse en el solar núm. 11,118, Santurce, Norte, Urbanización Religiosa del Sagrado Corazón, Parada 26, Santurce," que aparece firmado por Francisco M. Rexach y una cuenta pasada por el demandante al demandado, de fecha de 20 de abril de 1947, por la suma de $745.60.

ello." Al argumentar dichos señalamientos de error sostiene el apelante que la prueba del demandante no demostró la existencia de un contrato de arrendamiento a precio cierto y fijo, tal como lo exige la ley y la jurisprudencia; que todo lo que demostró dicha evidencia fué "un convenio entre el demandante y el demandado para la prestación de servicios profesionales por parte del demandante bajo la condición de que la obra a realizarse no excedería de $12,000 a $13,000 y sobre esa suma tendría el demandante un 3 por ciento como remuneración por sus servicios."

Si bien el tribunal inferior no formuló una conclusión específica a los efectos de que la prueba del demandante no demostró la existencia de un contrato a precio cierto, la misma se desprende del contexto de su opinión. Estimó probado que el demandado "le encargó al demandante la preparación de un plano para edificación de una casa que se construiría en un solar del demandado" y su conclusión sobre los honorarios del demandante fué la siguiente:

"El demandante evidenció sus honorarios en la siguiente forma: $540.60 por concepto del anteproyecto original así como por el valor de los planos finales, todo ello, de acuerdo con la tarifa del Colegio de Ingenieros y Arquitectos de Puerto Rico; $205 por pagos parciales hechos a otros ingenieros para la confección de planos complementarios; $279.63 equivalentes al cincuenta y cinco (55%) por ciento del cinco (5%) por ciento de $22,370 por concepto de las especificaciones que el demandante revisó y estampó su firma haciéndose responsable por las mismas y $15, valor de copia extra que le envió, según requisito, a las oficinas del Negociado de Permisos."

Es inevitable la conclusión de que el Juez consideró el convenio de las partes como un contrato en el cual no se había establecido precio cierto, por lo cual, a base de lo que "evidenció" el demandante, el Tribunal fijó los honorarios. El que no se hubiera pactado un precio cierto no tiene, sin embargo, el efecto que pretende darle el apelante. En un contrato como el celebrado en este caso la ley no requiere que

se pacte un precio cierto. Con relación a contratos de arrendamiento de servicios profesionales no existe el requisito de precio cierto establecido por el artículo 1434 del Código Civil, ed. de 1930.([2]) En este aspecto dicho contrato está específicamente reglamentado por el artículo 1473 que en su parte pertinente establece que "en cuanto a los servicios profesionales, se estará, para la remuneración de los mismos, a lo convenido entre las partes; *cuando no hubiera convenio y surgieren diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de la otra parte, ante cualquier corte de jurisdicción competente, el importe razonable de dichos servicios.*"([3]) (Bastardillas nuestras.) Véase *Sweet* v. *Zalduondo*, 26 D.P.R. 347; cf. *Del Moral Ex parte*, 43 D.P.R. 725, 726; *Gandía* v. *Pérez Moris*, 15 D.P.R. 360.

■ Tampoco le asiste razón al apelante en su contención de que la suma de $1,040.23 concedida como honorarios al demandante fué fijada "arbitrariamente, sin prueba para ello."([4]) Sobre ese extremo el testimonio del demandante fué al efecto de que originalmente envió al.demandado una cuenta por $745.60, suma ésta que representaba sus hono-

([2]) Dicho artículo lee como sigue:

"Artículo 1434.—En el arrendamiento de obras o servicios, una de las partes se obliga a ejecutar una obra, o a prestar a la otra un servicio por precio cierto".

Aún en casos cubiertos por este artículo—el de autos no lo está— el Tribunal Supremo de España ha reconocido la validez de ciertos convenios en los cuales no existía precio cierto previamente estipulado. Véase Sentencias de 10 de noviembre de 1944, 8 Jurisprudencia Civil, segunda parte, 358 y de 25 de enero de 1910, 113 Jurisprudencia Civil 296; Cf., Sentencia del 3 de marzo de 1926; 170 Jurisprudencia Civil 27 y de 18 de octubre de 1899, 88 Jurisprudencia Civil 105.

([3]) Esta parte de dicho artículo 1473 no tiene precedente en el Código Civil Español ya que fué introducida en virtud de la Ley de 24 de febrero de 1906, pág. 22 de las Leyes de dicho año.

([4]) No creemos necesario discutir el argumento adicional del apelante en el sentido de que a todo lo que se obligó con el demandante fué a pagar a éste el 3 por ciento del valor de la obra, ya que, como indicamos al disponer de los señalamientos de error tercero, cuarto y primera parte del quinto, el tribunal a quo dirimió el conflicto de la prueba en contra suya.

rarios por la confección del anteproyecto y de los planos finales. El valor de su trabajo por el anteproyecto fué calculado a base del uno por ciento (1%) del costo original estimado para la obra, $13,000, ascendiendo esta partida a $130. El valor de los planos finales lo calculó a base del 55 por ciento del 5 por ciento de $22,370, suma a que ascendía el costo de la obra según dichos planos finales. Por este concepto cargó al demandado la suma de $615. Después de haber enviado al demandado la referida cuenta, éste volvió donde él para que le autorizara las especificaciones, por cuyo trabajo le cargó $279.63, suma ésta que es un poco menor al 5 por ciento "de la tarifa total del proyecto completo", que es la que se cobra usualmente. Por copias adicionales de los planos para someterlos al Negociado de Permisos, y otros gastos en que incurrió, cargó la suma de $109.65.

A base de esta evidencia fué que el tribunal a quo fijó el importe de sus servicios en la cantidad de $1,040.23. Dicha prueba, a la que dió crédito dicho tribunal, es suficiente para sostener sus conclusiones a ese respecto, sin que estemos en condiciones de afirmar que el importe, así fijado, de los servicios prestados por el demandante, sea irrazonable.

■ El reparo que contra los honorarios de abogado hace el apelante en la segunda parte de su quinto señalamiento de error, no está justificado. Aunque el juez sentenciador no hizo conclusión de hecho al efecto de que el demandado fué temerario, es evidente que así lo estimó, ya que concedió al demandante $200 en concepto de honorarios de abogado. *Font v. Pastrana*, 73 D.P.R. 247. Y en cuanto a la suma concedida, no vemos razón alguna para alterarla.

*Debe confirmarse la sentencia.*