PLINIO PÉREZ MARRERO, demandante y recurrido, *v.* COLEGIO DE CIRUJANOS DENTISTAS DE PUERTO RICO, demandado y recurrente.

*Número:* RE-89-101 *Resuelto:* 15 de septiembre de 1992

*Aurelio Gracia Morales*, abogado del recurrido; *Delfín Sosa Suárez*, abogado del recurrente.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

Este caso trata sobre una acción en cobro de honorarios por servicios profesionales presentada por el demandante recurrido, Lcdo. Plinio Pérez Marrero, contra el demandado recurrente, Colegio de Cirujanos Dentistas de Puerto Rico. Exponemos los hechos relevantes que no están en controversia.

I

El Colegio de Cirujanos Dentistas de Puerto Rico (Colegio), para el año de 1976, solicitó del licenciado Pérez Marrero asesoramiento legal en cuanto a la procedencia jurídica de una posible acción en cobro de dinero contra la Corporación de Servicios de Seguros de Salud, Inc. (Triple S), dimanante la misma de un contrato suscrito entre ambas partes en el año 1961. En relación a dicha consulta, el demandante recurrido le informó al demandado recurrente que el contrato suscrito entre el Colegio y Triple S era uno exigible.[1]

Así las cosas, en el 1979, el demandado recurrente, luego de un sinnúmero de gestiones extrajudiciales infructuosas, decidió contratar los servicios profesionales del licenciado Pérez Marrero para que éste instara la correspondiente acción judicial. En torno a los honorarios de abogado, el licenciado Pérez Marrero se reunió con el en-

---

[1] En esta ocasión, se le pagó al licenciado Pérez Marrero por los servicios profesionales prestados; esto es, por el tiempo invertido en la dilucidación de la consulta.

tonces presidente del Colegio, Dr. Antonio Busquets, y con el Lcdo. Carlos Aponte, abogado y Director Ejecutivo del Colegio. En dicha reunión, el demandado recurrente rechazó el pago por horas trabajadas ya que no podía desembolsar esa cantidad de dinero, acogiéndose, en consecuencia, a un contrato de honorarios contingentes. Luego de varias reuniones, las partes acordaron que se le pagaría al demandante el 15% de cualquier suma obtenida mediante sentencia a su favor y $3,000 en concepto de *retainer fee*; suma de dinero que sería descontada de los honorarios contingentes acordados.[2] Este acuerdo entre el licenciado Pérez Marrero y el Colegio *se redujo a escrito* y fue aceptado mediante carta fechada de 27 de noviembre de 1979 por el entonces presidente del Colegio, Dr. Antonio Busquets.

Establecida así la forma de pago por los servicios profesionales entre las partes, el demandante recurrido procedió a instar la correspondiente demanda en cobro de dinero contra Triple S en el Tribunal Superior de Puerto Rico, Sala de San Juan, en el caso *Colegio de Cirujanos Dentistas de P.R. v. Seguros de Servicios de Salud*, Civil Núm.

---

[2] En la carta a esos efectos preparada, se expresó lo siguiente:

"Por la presente enmiendo mi comunicación de 28 de junio de 1979 para conformarla a los términos de nuestra conversación-reunión del 3 de octubre próximo pasado.

"Esta oficina está en disposición de instituir la acción correspondiente contra la Triple S a los efectos de conseguir la liquidación y reembolso al Colegio de la suma correspondiente del 50% del excedente de los ingresos mencionados en el párrafo 4 del contrato firmado el mes de mayo de 1971 con la mencionada Triple S.

"Los honorarios a recibirse por esta oficina serán equivalentes al 15% de la suma que se recobre por acción judicial. Se recibirá un "retainer fee" de $3,000.00 el cual se pagará en partidas de $1,000.00 el 1ro. de enero, 1ro. de abril y 1ro. de julio de 1980. Dicho "retainer" se descontará de los honorarios arriba acordados, deduciendo, por supuesto, la suma correspondiente a los gastos incurridos en la tramitación del pleito. Si como resultado de la radicación de la demanda el pleito fuese liquidado mediante transacción durante los 60 días subsiguientes a la radicación de ésta, los honorarios arriba estipulados se limitarán al 10% de la suma reconocida al Colegio.

"Asumiendo su ratificación de los términos acordados según arriba se exponen, me propongo durante los próximos días radicar la acción legal correspondiente y notificar de la misma a la Triple S. Le agradeceré firme y devuelva copia de esta comunicación como constancia de su conformidad." Apéndice, págs. 19–20.

79-7035. Estando este caso pendiente, y ya comenzado el descubrimiento de prueba por ambas partes, Triple S instó a su vez una acción independiente contra el Colegio demandado recurrente, imputándole violación a la Ley de Monopolios de Puerto Rico, Caso Civil Núm. 82-4950.(³)

Ante esa situación, y con el deseo de restaurar las relaciones profesionales entre ambas entidades, tanto el Colegio como Triple S decidieron que lo más conveniente a sus intereses era desistir de sus respectivas reclamaciones judiciales. A esos efectos, el abogado demandante recurrido, en cumplimiento del deseo de su cliente de desistir o terminar el pleito, radicó con fecha 17 de noviembre de 1983 moción de desistimiento, la cual dio por terminado el pleito entre el Colegio y Triple S.(⁴)

Cabe señalar que previo a la presentación de la moción de desistimiento antes mencionada, con fecha de 29 de julio de 1983, el demandante recurrido le remitió al demandado recurrente una factura en cobro de los servicios profesionales por él prestados. El abogado demandante facturó a base de las horas trabajadas.(⁵)

Inconforme con la facturación relativa a los servicios prestados, el demandado recurrente solicitó el expediente del caso para estudiarlo y, mediante carta de 21 de noviembre de 1983, le comunicó al demandante recurrido que rechazaba la reclamación de honorarios de abogado ya que entendía que, a tenor con los términos y condiciones del

---

(³) En el primer caso, el Colegio reclamaba en virtud de un contrato con Triple S la liquidación y reembolso del excedente de ingreso del plan dental calculado en aquella fecha en o alrededor de $600,000. En el Caso Civil Núm. 82-4950, Triple S reclamaba en daños por la alegada violación a la Ley de Monopolios de Puerto Rico una suma en exceso de $400,000, suma que podía alcanzar la cantidad de varios millones de dólares.

(⁴) En el Caso Civil Núm. 82–4950, la demandante Triple S, con fecha de 17 de noviembre de 1983, también presentó la moción de desistimiento, la cual dio por terminado el pleito.

(⁵) A esos efectos, alegó haber invertido en el caso un total de 296 horas con 30 minutos de trabajo, a razón de $90 la hora. Luego de restar el costo de unos gastos incurridos y deducir el *retainer fee* calculó que la suma adeudada era de $24, 913.95.

pacto de cuotalitis, no tenía que desembolsar la suma reclamada.([6]) Debido a la situación acaecida, y no generándose más comunicación entre las partes, el 3 de noviembre de 1986 el demandante recurrido presentó demanda en cobro de servicios profesionales contra el demandado recurrente en el Tribunal Superior de Puerto Rico, Sala de San Juan.

El Colegio demandado contestó la demanda. Levantó, como defensa afirmativa, que al ser el contrato de honorarios a base de pacto de *cuotalitis* y no habiéndose recibido compensación alguna en el pleito, el demandante no tenía derecho a reclamar honorarios de abogado.

Luego de varios trámites procesales, el 20 de diciembre de 1988 el tribunal de instancia celebró la vista en su fondo. En la misma recibió tanto prueba documental como testifical. El foro de instancia dictó sentencia en el caso. Determinó que el demandante tenía derecho a recibir una justa compensación por la labor realizada a base de un *quantum meruit*. En adición, el tribunal de instancia concluyó que el demandante se había desempeñado conforme a los cánones del Código de Ética Profesional y que la decisión de terminar y/o desistir del pleito provino exclusivamente del demandado recurrente. En cuanto al valor razonable de los servicios prestados, el foro sentenciador estableció, como hecho no controvertido, que el demandante invirtió unas 326 horas con 30 minutos en su gestión profesional. Considerando el tipo de caso envuelto, los honorarios que se acostumbran cobrar en ese distrito judicial, así como la experiencia y prestigio del abogado demandante, determinó que la facturación a razón de $90 la hora, era una razonable. Condenó, en consecuencia, a la parte

---

([6]) El demandado recurrente acompañó su comunicación escrita con un cheque de $1,228.95 como reembolso de los gastos incurridos. El demandante recurrido nunca había solicitado tal reembolso, por lo que dicho cheque nunca fue cambiado. El demandante recurrido informó al Colegio que le devolvería el cheque cuando ellos así lo interesaren.

demandada a satisfacerle al abogado demandante la suma de $27, 613 en concepto de honorarios. Le impuso, en adición, el pago de honorarios e intereses por temeridad.

Inconforme con la sentencia del tribunal de instancia, el demandado recurrente acudió en revisión ante este Tribunal. En apoyo de su solicitud, le imputa al foro de instancia haber errado:

> 1. ... al concluir que el demandado recurrente fue debidamente advertido de las consecuencias que conlleva la contratación de servicios en base de honorarios contingentes a la luz y el alcanze de lo que dispone el Canon 24 de los de Etica Profesional[;]
> 2. ... al concluir que entre las contingencias razonablemente previsibles que pudieran surgir durante el transcurso de un pleito, no se encuentra presente el desistimiento del mismo.
> 3. ... al concluir que el demandado recurrente procedió con temeridad[;]
> 4. ... al imponer honorarios de abogado a la parte demandada recurrente en el presente caso[; y]
> 5. ... al imponer intereses a la parte demandada recurrente y al concluir que el pago de intereses debe computarse desde que el demandante recurrido preparó su Factura por servicios rendidos. Solicitud de revisión, págs. 5–6.

Expedimos el auto de revisión solicitado. Ambas partes han comparecido. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

## II

El contrato de servicios profesionales de abogado se considera una variante del contrato de arrendamiento de servicios. Art. 1434 del Código Civil, 31 L.P.R.A. sec. 4013. Es un contrato propio de los de prestación de servicios de las profesiones y artes liberales. J. Puig Brutau, *Fundamentos de Derecho Civil*, 2da ed., Barcelona, Ed. Bosch, 1982, T. II, Vol. II, pág. 450. Como consecuencia de su naturaleza sui géneris, la relación de abogado y cliente

se encuentra inexorablemente ligada a los cánones del Código de Ética Profesional, 4 L.P.R.A. Ap. IX. *Nassar Rizek v. Hernández*, 123 D.P.R. 360 (1989); *Colón v. All Amer. Life & Cas. Co.*, 110 D.P.R. 772 (1981).

■■■■ El asunto de los honorarios de abogado está reglamentado por el Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX.([7]) A esos efectos, hemos resuelto que

([7]) El Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, dispone:

"La fijación de honorarios profesionales debe regirse siempre por el principio de que nuestra profesión es una parte integrante de la administración de la justicia y no un mero negocio con fines de lucro. Al fijar el valor de los honorarios, deben considerarse los siguientes factores:

"(1) El tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso;

"(2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes;

"(3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares;

"(4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado;

"(5) la contingencia o certeza de la compensación; y

"(6) la naturaleza de la gestión profesional, si es puramente casual o para un cliente constante.

"Es deseable que se llegue a un acuerdo sobre los honorarios a ser cobrados por el abogado al inicio de la relación profesional y que dicho acuerdo sea reducido a escrito.

"El abogado no debe estimar sus consejos y servicios en más ni en menos de lo que realmente valen. Al aceptar la representación profesional de un cliente debe considerar que le debe a éste un máximo de esfuerzo profesional en la medida de su talento y preparación. No debe aceptar retribuciones mínimas con la idea preconcebida de rendir esfuerzos mínimos.

"La aptitud de un cliente para pagar no puede justificar que se cobre en exceso del valor de los servicios prestados, pero su pobreza puede ser tal que requiera el que se le cobre menos y aun nada. Solicitudes razonables de servicios de parte de colegas, de sus viudas y huérfanos, sin medios amplios de fortuna, deben recibir especial y bondadosa consideración.

*"Un abogado debe exigir el pago de honorarios contingentes sólo en aquellas ocasiones en que dichos honorarios sean beneficiosos para su cliente, o cuando el cliente lo prefiera así después de haber sido debidamente advertido de las consecuencias.*

"Con el propósito de que los clientes estén protegidos contra cargos injustos, los honorarios contingentes deben ser razonables y estar siempre sujetos a la aprobación

es deseable que el acuerdo o pacto sobre honorarios a ser cobrados sea reducido a escrito, con la mayor claridad en sus términos y libre de ambigüedades. Canon 24, ante; *Colón v. All Amer. Life & Cas. Co.*, ante; *Ramírez, Segal & Látimer v. Rojo Rigual*, 123 D.P.R. 161 (1989). En cuanto a los honorarios contingentes, hemos señalado que éstos no están reñidos con la ética profesional cuando sean beneficiosos para el cliente o cuando el cliente lo prefiera así y se le haya explicado sus consecuencias. Canon 24, ante; *Ramírez, Segal & Látimer v. Rojo Rigual*, ante. "En relación con éstos, es preferible que se consignen en el acuerdo escrito las *contingencias previsibles* que pudieran surgir durante el transcurso del pleito." (Énfasis suplido.) *Ramírez, Segal & Látimer v. Rojo Rigual*, ante, págs. 171–172. Véase *Colón v. All Amer. Life & Cas. Co.*, ante.

■ En *Ramírez, Segal & Látimer v. Rojo Rigual*, ante, pág. 173, reiteramos que "tanto los cánones de ética profesional como la jurisprudencia, indican que la mejor práctica la constituye el acordar, por escrito y con claridad, los honorarios y designar una cantidad fija o una fórmula para computarla o determinarla". Veánse: Cánones 24 y 25 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX; *Colón v. All Amer. Life & Cas. Co.*, ante.

### III

Del testimonio brindado ante el tribunal de instancia por el expresidente del Colegio, Dr. Antonio Busquets, surge que al momento de contratar los servicios profesio-

---

del *tribunal, en aquellos casos en que la intervención judicial sea requerida por ley o por alguna de las partes en el litigio.* Es altamente impropio de un abogado el cobrar honorarios contingentes en un caso criminal.

"*El abogado debe acatar los deseos de un cliente ansioso de transigir su pleito.*

"Los honorarios concedidos por un tribunal son para beneficio del cliente y no debe el abogado reclamarlos para sí o renunciarlos sin autorización expresa del cliente." (Énfasis suplido.)

nales del demandante recurrido, el Colegio no estaba en posición de pagar honorarios por hora debido a que económicamente no podían desembolsar esa cantidad de dinero. Por tal razón, el demandado recurrente prefirió contratar a base de honorarios contingentes. De la prueba desfilada en instancia no surge que el demandado recurrente fuera presionado de manera alguna para suscribir el contrato de honorarios contingentes. Pactaron voluntariamente que se le pagaría al demandante recurrido el 15% de cualquier suma obtenida mediante sentencia a favor del Colegio. El doctor Busquets testificó, y corroboró el hecho, de que en las reuniones habidas entre las partes se le orientó extensamente sobre el pacto de cuotalitis. No cabe la menor duda que en el caso de autos, el cliente prefirió y exigió el pacto de cuotalitis ya que éste le beneficiaba. El demandante recurrido, en cumplimiento con el Canon 24, ante, redujo a escrito el contrato de honorarios.

La carta-contrato suscrita entre las partes revela con claridad los términos convertidos para la prestación de servicios y establece claramente la fórmula en que habrían de computarse los honorarios. El cliente tuvo la información necesaria para poder estimar a cuánto ascenderían los honorarios si ocurría la contingencia. *Resulta obvio que el primer error no fue cometido.*[8] Véanse: *Ramírez, Segal &*

---

[8] Nuestra decisión encuentra apoyo en la Regla 1.5 y en el comentario de las Reglas Uniformes de Conducta Profesional sometido a la American Bar Association.

"*Rule 1.5 Fees*

"(c) A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by paragraph (d) or other law. A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination."

En los "comentarios" a la misma, se expresa:

*Látimer v. Rojo Rigual,* ante; *López de Victoria v. Rodríguez,* 113 D.P.R. 265 (1982); *Colón v. All Amer. Life & Cas. Co.,* ante.

## IV

■ El tribunal de instancia concluyó, como cuestión de derecho, que el demandante tenía derecho a una compensación razonable por los servicios prestados en el presente caso a base de un *quantum meruit.* Debemos resolver, en consecuencia, si un abogado que pacta honorarios contingentes en un caso de cobro de dinero y luego se ve obligado a desistir de la demanda que a esos efectos radicara por instrucciones de su cliente, tiene derecho a cobrar honorarios, no a base del pacto de cuotalitis, sino por el valor razonable de los servicios prestados, o *quantum meruit,* aun cuando la eventualidad del desistimiento no hubiera sido prevista en el contrato que suscribieron las partes.

Con relación al hecho de que la eventualidad del desistimiento no fue prevista, el tribunal de instancia expresó lo siguiente:

[s]egún el testimonio del Lcdo. Plinio Pérez Marrero a quien el Tribunal le da entero crédito, al momento de la contratación no se discutió nada en términos del pago de honorarios si el Cole-

---

"When the lawyer has regularly represented a client, they ordinarily will have evolved an understanding concerning the basis or rate of the fee. In a new client-lawyer relationship, however, an understanding as to the fee should be promptly established. *It is not necessary to recite all the factors that underline the basis of the fee, but only those that are directly involved in its computation. It is suficient, for example, to state that the basic rate is an hourly charge or a fixed amount or an estimated amount, or to identify the factors that may be taken into account in finally fixing the fee.* When developments occur during the representation that render an earlier estimate substantially inaccurate, a revised estimate should be provided to the client. A written statement concerning the fee reduces the possibility of misunderstanding. Funishing the client with a simple memorandum or a copy of the lawyer's customary fee schedule is sufficient if the basis or rate of the fee is see forth." (Énfasis suplido.) American Bar Association, *Model Rules of Professional Conduct,* 1983, pág. 6.

gio decidió desistir, por la razón que fuese, del pleito. No existía en ese momento circunstancia alguna que hiciera previsible ese hecho. A juicio de este Tribunal dicha circunstancia no era previsible tampoco en aquel momento. La intención de las partes era la de radicar un pleito en reclamo de un cobro de dinero y no había base alguna para prever que el Colegio interesara solicitar el desistimiento del caso. Apéndice, pág. 4.

■■■ Somos del criterio, en primer lugar, que nada de lo establecido en los cánones del Código de Ética Profesional exige que en un contrato de servicios profesionales se contemplen, o detallen, todas las posibles eventualidades o contingencias que puedan acaecer durante la tramitación de un pleito. No hay duda de que se podría argumentar, con cierta lógica, que la eventualidad de que el cliente pueda decidir desistir de un pleito, en el cual se han pactado honorarios contingentes, es una razonablemente previsible. Si bien ello es cierto, somos del criterio que la ausencia de consideración de esa eventualidad, y la responsabilidad por ello, no se le puede imputar exclusivamente al abogado; sobre todo, en un caso como el presente en que el "cliente" es una asociación o agrupación compuesta y dirigida por profesionales. De hecho, debe recordarse que el director ejecutivo del Colegio demandado —para la fecha en que se contrataron los servicios profesionales del abogado demandante— era abogado. *De todas maneras, el hecho de que ninguna de las partes contratantes haya previsto dicha eventualidad, no puede constituir impedimento absoluto para que el abogado cobre una suma razonable de dinero por los servicios profesionales que, efectivamente y de buena fe, haya éste prestado.*

■ En segundo lugar, en nuestra jurisdicción la acción para reclamar a base de un *quantum meruit* tiene su base en el Art. 1473 del Código Civil, 31 L.P.R.A. sec. 4111. La máxima legal *quantum meruit* significa "[t]anto como se merece"; es el derecho a reclamar el valor razonable de los

servicios prestados.(⁹) I. Rivera García, *Diccionario de Términos Jurídicos*, 2da ed. rev., New Hamphire, Ed. Equity Publishing Corp., pág. 425; *Rodríguez v. Ward*, 74 D.P.R. 880 (1953); *Ruiz de Val v. Morales*, 43 D.P.R. 283 (1932); *Zequeira v. C.R.U.V.*, 83 D.P.R. 878 (1961); *Ex parte Capó y Rivera*, 59 D.P.R. 899 (1942). El citado Art. 1473 del Código Civil, ante, dispone, en lo pertinente, que:

> Pueden arrendarse los servicios de criados y trabajadores sin tiempo fijo o por cierto tiempo. El arrendamiento hecho por toda la vida es nulo. *En cuanto a los servicios profesionales, se estará, para la remuneración de los mismos, a lo convenido entre las partes; cuando no hubiere convenio y surgieren diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de la otra parte, ante cualquier corte de jurisdicción competente, el importe razonable de dichos servicios.* (Énfasis suplido.)(¹⁰)

Según nuestro estado de derecho vigente, no cabe la menor duda que el abogado tiene derecho a recibir una compensación razonable por los servicios prestados. Art. 1473, ante; Cánones 24 y 25 del Código de Ética Profesional,

---

(⁹) En las jurisdicciones estatales de Estados Unidos donde predomina el *common law* se ha dicho que esta acción de *quantum meruit* está basada en diferentes teorías. Por un lado, algunos estados la definen como un principio de equidad que permite, en ausencia de pacto expreso, la compensación por servicios prestados. Así pues, entienden que se basa en la teoría del contrato implícito. *Lee v. Foote*, 481 A.2d 484 (1984); *Paxton v. O.P.F., Inc.*, 306 S.E.2d 527 (1983); *Kintz v. Read*, 626 P.2d 52 (Wash. 1981); *Bischoff v. Quong-Watkins Properties*, 748 P.2d 410 (Idaho 1987). Asimismo, también se ha dicho que la teoría de *quantum meruit* no surge del consentimiento de las partes, o que en ausencia de pacto expreso, el mismo proviene de la justicia natural y la equidad, y que está basado en la doctrina del enriquecimiento injusto; *Brown v. Thornton*, 432 P.2d 386 (Mont. 1967); *City of Ingleside v. Stewart*, 554 S.W.2d 939 (1977); *City of Sierra Vista v. Cochise Enterprises*, 697 P.2d 1125 (1985). De igual forma, en Louisiana, de jurisdicción civilista, equiparan la acción de *quantum meruit* con la del enriquecimiento injusto. En *Wilkins v. Hogan Drilling Co. Inc.*, 471 So. 2d 863, 867 (1985), se dijo que: "Unjust enrichment, or '*quantum meruit* as it is also called, is an equitable doctrine based upon the principle that one who benefits from another's labor and materials should not be unjustly enriched thereby and the law implies a promise to pay a reasonable amount even in the absence of specific a contract."

(¹⁰) La tercera oración (parte subrayada) del Art. 1473 del Código Civil, 31 L.P.R.A. sec. 4111, no tiene precedente alguno en el Código Civil español, ya que fue introducida mediante enmienda por la Ley de 24 de febrero de 1906, Leyes de Puerto Rico, pág. 22.

ante; *Colón v. All Amer. Life & Cas. Co.*, ante; *Nassar Rizek v. Hernández*, ante; *Rodríguez v. Ward*, ante; *Sánchez Acevedo v. E.L.A.*, 125 D.P.R. 432 (1990).

A tales efectos, expresamos en *Nassar Rizek v. Hernández*, ante, pág. 373, que "[l]o expuesto tiene como contraparte el derecho del abogado a recibir como profesional una compensación razonable por sus servicios. ... Como corolario, el abogado está facultado a entablar aquellas reclamaciones judiciales necesarias para el cobro de sus honorarios, aunque cautelarmente, el mismo canon señala que 'deben evitarse', a no ser que se presenten únicamente para impedir injusticias, imposiciones o fraude". (Escolio omitido.)

En *Ruiz de Val v. Morales*, ante, expresamos que un abogado, despedido por su cliente y que no había terminado su labor, tenía derecho a ser compensado a base de *quantum meruit*. Allí dijimos:

> Asimismo, como cuestión de derecho, resolvemos que si se emplea a una persona para celebrar una transacción, su destitución no le da derecho a obtener la cantidad mencionada en el contrato, a menos que el asunto quede definitivamente transigido. La persona despedida puede demandar sobre un *quantum meruit*, pero raras veces tendría derecho a toda la cantidad aludida en el contrato, epecialmente en ausencia de prueba sobre la consumación del compromiso, o de otras materias en que un cliente pueda haber sido ayudado por su abogado.[11] *Ruiz de Val v. Morales*, ante, pág. 289.

De igual manera, en *Colón v. All Amer. Life & Cas. Co.*, ante, pág. 777, expresamos que de no poderse estimar

---

[11] De igual forma, en muchas de las jurisdicciones estatales se ha resuelto que cuando un abogado es despedido sin justa causa por el cliente, el letrado no tiene derecho a recibir compensación a base del pacto de cuotalitis, pero todavía puede cobrar honorarios de acuerdo con un *quantum meruit*. Véanse: *Fowler v. Jordan*, 430 So. 2d 711 (1983); *Johns v. Klecan*, 556 N.E.2d 689 (1990); *Hardman v. Snyder*, 393 S.E.2d 672 (1990); *Gilbert v. Edmondson*, 388 S.E.2d 713 (1989); *Morrow v. Stewart*, 399 S.E.2d 280 (1990). Véase, además, Anotación, *Limitation to Quantum Meruit Recovery Where Attorney Employed Under Contingent Fee Contract is Discharged Without Cause*, 92 A.L.R.3d 690 (1979).

los honorarios de abogado a base de pacto de cuotalitis, procede que los tribunales estimen una razonable compensación que retribuya adecuadamente la labor realizada por el abogado.

 En el caso ante nuestra consideración, el demandante recurrido y el demandado recurrente suscribieron un contrato a base de honorarios contingentes. Sabido es que bajo dicho contrato el abogado es compensado si gana el caso, o sea, se hace partícipe en el resultado del pleito para percibir un por ciento del crédito de su cliente. De igual forma, si se verifica cualquiera de las contingencias pactadas, el abogado cobra honorarios en proporción a la cuantía concedida por el tribunal. Por otro lado, si el abogado pierde el caso en los méritos, éste no tiene derecho a cobrar nada, pues el pacto de cuotalitis asocia al abogado a la suerte del proceso. *Colón v. All Amer. Life & Cas. Co.*, ante; *López de Victoria v. Rodríguez*, ante; *Franqui v. Fuentes Hnos., S. en C.*, 44 D.P.R. 712 (1933).[12]

Según surge de la prueba desfilada ante el tribunal de instancia, el ex presidente del Colegio, doctor Busquets, expresó que la decisión de terminar el pleito contra Triple S fue tomada por el Comité Ejecutivo del Colegio y que luego el abogado demandante fue informado de esa decisión. La prueba también estableció que el motivo del Colegio recurrente para desistir de la reclamación fue el efecto que tuvo la demanda millonaria presentada por Triple S imputándole al Colegio la violación a la Ley de Monopolios. Por tal razón es que tanto el Colegio como Tri-

---

[12] En las jurisdicciones estatales en Estados Unidos también se ha resuelto que el hecho que la contingencia pactada no ocurra, no es impedimento en ciertos casos para que el abogado sea compensado a base de un *quantum meruit*. Véanse: *Brookhaver Supply Company, Inc. v. Rary*, 205 S.E.2d 885 (1974); *Kinsey v. Dixon*, 467 S.2d 862 (1985); *Henry R. Liles v. Bourgeois*, 517 S.2d 1078 (1987); *Saucier v. Hayes Dairy Products, Inc.*, 373 S.2d 102 (1979); *Overman v. All Cities Transfer Co.*, 336 S.E.2d 341 (1985); *Morrow v. Stewart*, ante, *Johns v. Klecan*, ante; *Hardman v. Snyder*, ante.

ple S deciden restaurar, para su mutuo beneficio, las relaciones entre ambas entidades y proceden, entonces, a desistir recíprocamente, de sus reclamaciones. Cabe señalar que el demandante recurrido cumplió con las exigencias éticas de acatar los deseos del cliente de transigir o poner fin al litigio. Canon 24 del Código de Ética Profesional, ante.

En resumen, de la prueba desfilada ante el tribunal de instancia surge con claridad que la contingencia pactada en el contrato entre las partes nunca llegó a darse debido al deseo del cliente de desistir del pleito y/o por causas no imputables al abogado. En vista de ello, el demandante recurrido no podía reclamar honorarios a base del pacto de cuotalitis. Como consecuencia de ello cesó, entre el demandante recurrido y el demandado recurrente, el convenio pactado de honorarios. *En ausencia de pacto expreso es de aplicación el Art. 1473 del Código Civil,* ante.

Así pues, y conforme a lo antes expuesto, *resolvemos que un abogado que es contratado bajo un convenio de honorarios contingentes y no termina su gestión profesional debido al deseo del cliente de desistir del pleito, tiene derecho, conforme al Art. 1473 del Código Civil y el Canon 25 del Código de Ética Profesional, ante, a ser compensado a base del valor razonable de los servicios prestados.*[13]

En cuanto a la forma de remuneración del abogado, entendemos que fue correcta la apreciación del foro sentenciador relativa al número de horas trabajadas por el abogado demandante recurrido y la tarifa razonable por hora

---

[13] De igual forma, se ha reconocido en la mayoría de las jurisdicciones estatales el mismo principio al efecto de que el abogado empleado a base del pacto de cuotalitis puede reclamar honorarios a base de *quantum meruit* aun cuando no se llegue a completar el trabajo debido al deseo del cliente de desistir del pleito. Véanse: *Dorsey v. Edge,* 43 S.E.2d 425 (1947); *Woodley v. Robinson,* 100 So. 2d 255 (1958); *Sachs v. Klein,* 154 A.2d 134 (1959); *Brookhaven Supply Company, Inc. v. Rary,* ante; *Overman v. All Cities Transfer Co.,* ante; *Lougue v. Dejan,* 56 So. 427 (1911); *Morrow v. Stewart,* ante.

a ser pagada a éste.([14]) Es doctrina claramente establecida por este Tribunal que no intervendremos con una determinación de hechos del tribunal de instancia a menos que se nos demuestre pasión, prejuicio, parcialidad o error manifiesto. Véanse: *Morán Simó v. Gracia Cristóbal*, 106 D.P.R. 155, 161 (1977); *Sánchez Rodríguez v. López Jiménez*, 116 D.P.R. 172 (1985); *Pérez Cruz v. Hosp. La Concepción*, 115 D.P.R. 721 (1984).

## V

Finalmente, examinamos los últimos tres errores señalados por el recurrente en los que cuestiona la imposición de honorarios de abogado e intereses por temeridad. El recurrente aduce que no procedió con temeridad al defenderse de la presente reclamación debido a que la controversia planteada era una novel. No tiene razón.

En nuestro ordenamiento procesal civil, *de ordinario*, la condena de honorarios de abogado e intereses por temeridad, conforme las disposiciones de las Reglas 44.1(d) y 44.3(b) de Procedimiento Civil de 1979, según enmendadas, 32 L.P.R.A. Ap. III, "depende exclusivamente de la determinación que haga el magistrado que presidió el proceso respecto a si la parte perdidosa, o su abogado, actuaron o no en 'forma temeraria o frívola' ". (Énfasis suprimido.) *Corpak, Art Printing v. Ramallo Brothers*, 125 D.P.R. 724, 736 (1990). Una vez determinada la temeridad, la imposición de honorarios de abogado e intereses por temeridad es imperativa. Véanse: *Fernández v. San Juan*

---

[14] El foro de instancia, recordaremos, determinó como un hecho no controvertido que el valor razonable de los servicios prestados, según la prueba desfilada de horas invertidas, era una de 326 horas con 30 minutos. De igual forma concluyó que la facturación a razón de $90 la hora era una razonable y que en el juicio el demandado recurrente tampoco impugnó dicha prueba. Además de lo antes señalado, el tribunal consideró el tipo de litigio envuelto, los honorarios que se acostumbran cobrar en ese distrito judicial y la experiencia y prestigio del abogado.

*Cement Co., Inc.*, 118 D.P.R. 713 (1987); *Santos Bermúdez v. Texaco P.R., Inc., 123 D.P.R. 351 (1989); Corpak, Art Printing v. Ramallo Brothers,* ante. De esa determinación de temeridad, el tribunal deberá imponerle en la sentencia una suma razonable de honorarios. Véanse: *Raoca Plumbing v. Trans World*, 114 D.P.R. 464, 468 (1983); *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 D.P.R. 38, 40 (1962).

■ La condena al pago de honorarios de abogado e intereses por temeridad tiene como propósito fundamental el de penalizar o sancionar a aquellas partes que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento, obligan a otra parte a asumir y a sufrir las molestias, gastos, trabajo e inconsecuencia de un litigio innecesario. Véanse: *Corpak, Art Printing v. Ramallo Brothers*, ante, pág. 737; *Colondres Vélez v. Bayrón Vélez*, 114 D.P.R. 833, 842 (1983); *Fernández v. San Juan Cement Co., Inc.*, ante, pág. 718. Mediante este mecanismo, los tribunales protegen a los litigantes honestos de imposiciones, dilaciones y gastos innecesarios. R.E. Bernier, Elfrén, *El derecho de accesión en Puerto Rico*, Barcelona, Imp. Vda. de Daniel Cochs, 1970, pág. 31.

■ Reiteradamente hemos resuelto que no procede la imposición de honorarios de abogado, por razón de temeridad, en un caso donde una parte acude al tribunal, o se defiende, en relación con una controversia de hechos que resulta de "primera impresión" en nuestra jurisdicción. *Rodríguez v. John Hancock Mutual Life*, 110 D.P.R. 1, 8 (1980). *El hecho de que el punto resulte "nuevo", sin embargo, no constituye "carta blanca" para actuar en forma temeraria o frívola.* Ante una situación de hechos innegables, o un estado de derecho claro, el hecho de que se trate de un asunto nunca antes considerado en nuestra jurisdicción no constituye excusa para una conducta o actuación obstinada, contumaz, temeraria o frívola. J.A. Cuevas Se-

garra, *Práctica Procesal Puertorriqueña: Procedimiento Civil*, San Juan, Pubs. J.T.S., 1986, Vol. II, pág. 245.

La determinación del foro de instancia a los efectos de que el demandado recurrente incurrió en temeridad es a nuestro juicio correcta. A esos efectos, determinó el foro sentenciador que:

> Ciertamente se ha llegado a juicio por la negativa de la parte demandada a pagar. Esa negativa tenía como base las alegaciones expuestas en la teoría del informe de Pre–Trial [... en el sentido de que el Colegio desistió del pleito por recomendación del Lcdo. Pérez Marrero. Esta alegación se desvanece ante el propio testimonio del Dr. José A. Surís quien expresó desde la silla de los testigos que la recomendación del abogado demandante había sido que "el caso había que verlo". No obstante, a pesar de esa recomendación[, ] el Colegio decide desistir del pleito.] Sin embargo, en el juicio la prueba del Colegio no sólo no estableció sus defensas sino que aportó prueba favorable al demandante. Ante esas circunstancias, no se justificaba llegar a la etapa de juicio.(¹⁵) Apéndice, págs. 14 y 16.

▮▮▮ En cuanto al último error señalado por el demandado recurrente, la Regla 44.3(b) de Procedimiento Civil, ante, dispone que en todo caso de cobro de dinero los intereses por temeridad se imponen, en casos como el de autos, *desde que surge la causa de acción.* Véanse: *Roldán Medina v. Serra*, 105 D.P.R. 507 (1976); *Colondres Vélez v. Bayrón Vélez*, ante. Como mencionáramos anteriormente, el contrato de servicios profesionales de abogado por su

---

(¹⁵) Del expediente del caso surge que esa determinación del tribunal encuentra apoyo en la declaración jurada que prestara el entonces presidente del Colegio, doctor Busquets, en la moción en oposición a la sentencia sumaria presentada por el demandante recurrido. En dicha declaración, el demandado recurrente afirmó que el licenciado Pérez Marrero fue quien le recomendó al Colegio desistir de la reclamación. De la Minuta de 23 de febrero de 1988 se desprende que en la vista para discutir la sentencia sumaria y la oposición el demandante le expresó al tribunal (debido a la declaración jurada del recurrente en la Moción en Oposición a Sentencia Sumaria) que reconocía la existencia de una controversia de hechos y solicitó entonces la vista en su fondo. Sin embargo, esa controversia de hechos nunca se dirimió, ya que el propio demandado recurrente aportó prueba favorable al demandante recurrido al admitir que la decisión de desistir provino exclusivamente del Colegio.

naturaleza sui géneris, está estrictamente vinculado a los cánones del Código de Ética Profesional. Por tal razón hemos resuelto que la acción en cobro de honorarios tiene que ser tramitada en un *pleito independiente* del caso que le dio origen. Véanse: Art. 1473 del Código Civil, ante; *Sánchez Acevedo v. E.L.A.*, ante. De tal manera se logra que el letrado acate fielmente el mandato ético a los efectos de terminar su gestión profesional, no obstante el hecho de no haber sido remunerado por sus servicios. En resumen, a la luz de los cánones del Código de Ética Profesional, y la jurisprudencia interpretativa de los mismos, no es hasta que el abogado *termina su gestión profesional* que puede entablar la correspondiente acción en cobro de honorarios.

Es en ese momento, en nuestro criterio, que surge su causa de acción. *Roldán Medina v. Serra*, ante. En el caso de autos, ese momento acaeció cuando el tribunal dictó sentencia archivando, por desistimiento, la demanda en cobro de dinero que el abogado recurrido había radicado en representación del aquí demandado recurrente. Ahí finalizó la gestión profesional de dicho abogado.

Por los fundamentos antes expuestos, *se dicta sentencia modificatoria de la dictada por el Tribunal Superior, Sala de San Juan, a los únicos efectos de determinar el momento en que surgió la causa de acción del demandante con el propósito de computar los intereses por temeridad. Así modificada, se confirma.*

*Se dictará sentencia de conformidad.*

Los Jueces Asociados Señores Negrón García y Alonso Alonso están conformes con la opinión del Tribunal, Partes I, II, III y IV de la misma, excepto con la imposición de honorarios de abogado e intereses por temeridad, Parte V de la opinión. El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

Estoy de acuerdo con la mayoría del Tribunal en que el recurrido en este caso tiene derecho a alguna compensación por los servicios prestados. Aunque la profesión de abogado es parte integrante del sistema de administración de justicia del país, y no meramente una ocupación que se ejerce con fines de lucro, el abogado que realiza labores en beneficio de un cliente tiene legítimo derecho a que se le pague una cantidad razonable por tales labores.

Los cánones que rigen nuestra profesión, sin embargo, claramente intiman que los pleitos por honorarios deben evitarse y que un abogado debe recurrir al extremo de demandar a un cliente únicamente cuando medien circunstancias excepcionales. La acción judicial de un abogado contra su cliente no debe ser un evento ordinario, como lo es la de un acreedor corriente que insta demanda en cobro de dinero. Y los tribunales deben ser particularmente cuidadosos y exigir el mayor rigor profesional cuando consideran una acción de un abogado contra su cliente. Este rigor es indispensable no sólo para honrar la noción de que la abogacía es la profesión que ejerce el alto ministerio de administrar la justicia en el país, sino también para evitar la sospecha de que en los pleitos contra abogados tiende a prevalecer el interés gremial. En tales pleitos inevitablemente les toca a unos abogados juzgar a otros y, por lo tanto, se pone quisquillosamente a prueba la integridad de la profesión. Es en tales momentos que cobra especial importancia el Canon 38 del Código de Ética Profesional, que comienza señalando:

El abogado deberá esforzarse, al máximo de su capacidad, en la exaltación del honor y dignidad de su profesión, aunque el así hacerlo conlleve sacrificios personales, y debe evitar hasta

la apariencia de conducta profesional impropia. 4 L.P.R.A. Ap. IX.

En el caso ante nos existen varias circunstancias que ameritan la más cautelosa ponderación judicial y que la mayoría de este Tribunal resuelve de un modo que no es enteramente satisfactorio. En primer lugar, está el asunto de si al momento de discutir todo lo relativo a los honorarios, el recurrido debió haber previsto la eventualidad de que su cliente pudiese desistir del pleito una vez iniciado el mismo. La mayoría admite que tiene "cierta lógica" pensar que tal eventualidad era "razonablemente previsible", pero no le concede peso alguno al momento de resolver. A pesar de los claros términos del Canon 24 del Código de Ética Profesional, 4 L.P.R.A. Ap. IX, y del hecho de que el recurrido es conocidamente un letrado de gran experiencia y capacidad, la mayoría estima que no tiene responsabilidad alguna por no haber propuesto nada al inicio de la relación profesional sobre sus honorarios para la eventualidad en cuestión. En cambio, para la mayoría del Tribunal el cliente del recurrido *sí* debía conocer que, de finalizar el caso por desistimiento, venía obligado al pago por servicios prestados, aunque ello no se hubiese pactado. Al cliente, que no es abogado, se le imputa conocer no sólo las normas que rigen la fijación de honorarios de abogados, sino incluso lo que este Tribunal resolvería en el futuro en este caso, ya que al momento de pactar los honorarios contingentes la cuestión concreta que tenemos ante nos ahora era una novel que no había sido resuelta previamente. Al experimentado letrado la mayoría del Tribunal le da el beneficio de la duda, pero al cliente que no es abogado se le exige conocer lo que no estaba resuelto antes. Como consecuencia de esta inversión, en el rigor que es propio en casos de pleitos de honorarios, el cliente que al iniciar la relación profesional había rechazado el pago de honorarios a base de horas trabajadas por no tener recursos para ello, ter-

mina obligado precisamente a tal pago sin que importe para nada que su abogado había aceptado tácitamente tal limitación de recursos al acordar un pacto de cuotalitis como el medio para pagar los honorarios.

Este inusitado resultado se torna aún más sorprendente al considerar que la mayoría del Tribunal estima que el cliente fue *temerario* al defenderse de la acción instada por su abogado. Aunque la mayoría admite que la cuestión jurídica planteada en este caso es novel, le impone no obstante al cliente honorarios de abogado e intereses desde la fecha en que surgió la causa de acción. La actuación de la mayoría no sólo está reñida con nuestra jurisprudencia y nuestras prácticas invariables, sino que tratándose de un caso de abogado que demanda a su cliente constituye una desacertada interpretación de los cánones de ética profesional, que desvirtúa su más hondo sentido como normas de la profesión. Después de la opinión de la mayoría en este caso, no debemos sorprendernos si en la comunidad se generaliza la impresión de que es harto de temeridad disputar con un abogado en los tribunales.