EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Lcdo. Luis N. Blanco Matos<br><br>Peticionario<br><br>v.<br><br>Madeline Colón Mulero<br><br>Recurrida | Certiorari<br><br>2018 TSPR 102<br><br>200 DPR ____ |

Número del Caso: CC-2014-837


Fecha: 23 de mayo de 2018


Tribunal de Apelaciones:

>        Región Judicial de San Juan, Guayama



Abogado de la parte peticionaria:

>        Lcdo. César A. Matos Bonet



Abogada de la parte recurrida:

>        Lcdo. Josian J. Rivera Torres



Materia: Obligaciones y contratos: nulidad de pactos de honorarios contingentes; *quantum meruit*. Un abogado que renuncia voluntariamente a la representación legal de su cliente, antes de culminar la gestión profesional para la cual fue contratado y por la cual pretendía cobrar honorarios contingentes, tiene derecho a ser compensado por sus servicios a base de un *quantum meruit* siempre y cuando demuestre que hubo justa causa para la renuncia.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lcdo. Luis N. Blanco Matos<br><br>Peticionario<br><br>v.<br><br>Madeline Colón Mulero<br><br>Recurrida | CC-2014-0837 | *Certiorari* |

Opinión del Tribunal emitida por la Jueza Asociada señora Pabón Charneco.

En San Juan, Puerto Rico, a 23 de mayo de 2018.

Comparece ante nos el Lcdo. Luis N. Blanco Matos (el peticionario) y solicita que revoquemos una Sentencia emitida por el Tribunal de Apelaciones. Mediante esta, el foro *a quo* modificó la Sentencia del Tribunal de Primera Instancia en la que se declaró Con Lugar la Demanda de cobro de dinero instada por el peticionario y se condenó a la Sra. Madeline Colón Mulero (la recurrida) al pago de: treinta y cinco mil novecientos cuarenta y un dólares con veinticinco centavos ($35,941.25) por concepto de honorarios por servicios profesionales prestados; diez mil novecientos setenta y cuatro dólares con treinta y nueve centavos ($10,974.39) por concepto de gastos no reembolsados y tres mil quinientos dólares ($3,500.00) de honorarios por temeridad.

El presente recurso nos brinda la oportunidad de expresarnos en torno a la aplicación de la figura *quantum*

*meruit*. Específicamente, nos permite determinar si un abogado que renuncia a la representación legal de su cliente, antes de haber culminado la gestión profesional para la cual fue contratado y por la cual pretendía cobrar honorarios contingentes, tiene derecho a ser remunerado por los servicios prestados previo a la renuncia.

Con ello en mente, pasemos a delinear los hechos que dieron génesis a la controversia de autos.

I

El 20 de noviembre de 2006, la recurrida contrató al peticionario para que la representara a ella y a sus dos (2) hijos menores de edad en un pleito instado ante el Tribunal Federal para el Distrito de Puerto Rico (Contrato Núm. 1).[1] El 18 de mayo de 2009, la recurrida desistió voluntariamente de dicha reclamación por recomendación del peticionario.[2] No obstante, el 14 de mayo de 2010, presentó una Demanda en el Tribunal de Primera Instancia en la que alegó esencialmente las mismas causas de acción originalmente presentadas en el foro federal.[3]

Así las cosas, el 12 de enero de 2011, el peticionario le reclamó a la recurrida el reembolso de los gastos en los

---

[1] Se invocó *Federal Question Jurisdiction* en virtud del 28 USC sec. 1331 pues en la Demanda se alegó la violación al *Emergency Medical Treatment & Labor Act* ("EMTALA"), 42 USC sec. 1395dd. Petición de *Certiorari*, Apédice, págs. 77, 233.

[2] Alegadamente, la recomendación surgió luego de que el perito contratado examinara unos expedientes médicos y opinara que no hubo violación al EMTALA. Íd., págs. 253, 263-264, 322-323.

[3] La recurrida reclamó, por sí y en representación de sus dos (2) hijos menores de edad, una indemnización en daños y perjuicios por la muerte de otro hijo, producto de alegada impericia médica. *Colón Mulero, et al. v. Hosp. Episcopal Cristo Redentor,* GDP2010-0076.

que había incurrido durante el trámite del pleito federal, los cuales ascendían a once mil cuatrocientos setenta y cuatro dólares con treinta y nueve centavos ($11,474.39).[4] Dos (2) días después, solicitó autorización para renunciar a la representación legal de la recurrida. Alegó que existían diferencias irreconciliables entre ambos.[5] El 19 de enero de 2011, el foro primario autorizó la renuncia del peticionario. No obstante, el 1 de febrero de 2011, el peticionario y la recurrida se reunieron y conciliaron sus diferencias. Tanto es así que ese mismo día suscribieron un segundo Contrato de Servicios Profesionales (Contrato Núm. 2) en virtud del cual el peticionario reasumió la representación legal de la recurrida y de sus hijos menores de edad en el pleito estatal.[6]

El 24 de marzo de 2011, el peticionario le cursó a la recurrida una carta en la que le indicó que había intentado comunicarse con ella sin éxito alguno. Le informó que tenían pendiente un sinnúmero de gestiones relacionadas a su caso y que necesitaba su cooperación para la tramitación del mismo. Le apercibió que, de no comunicarse, solicitaría autorización judicial para renunciar al caso. El 7 de abril de 2011, el peticionario le cursó una segunda misiva en la que le indicó que la solicitud de renuncia que presentaría era irrevocable.

---

[4] Íd., pág. 79.

[5] Íd., pág. 158. Véase además: Petición de *Certiorari* al Tribunal de Apelaciones, Apéndice, pág. 29.

[6] Íd., págs. 78, 158. El Contrato Núm. 2 era prácticamente idéntico al Contrato Núm. 1, salvo por el reconocimiento que hizo la recurrida con respecto a los once mil cuatrocientos setenta y cuatro dólares con treinta y nueve centavos ($11,474.39) que adeudaba por concepto de gastos no reembolsados y el plan de pago correspondiente.

Al mismo tiempo, le exigió la suma que adeudaba por concepto de gastos, según había reconocido en el Contrato Núm. 2.[7] El 8 de abril de 2011, el peticionario presentó una segunda Moción de Renuncia de Representación Legal.[8] Esta vez, arguyó que la recurrida se había negado a cooperar en la tramitación de su caso, lo cual le impedía continuar representándola legalmente. El 11 de abril de 2011, el foro primario autorizó la renuncia.

Así las cosas, el 2 de mayo de 2011, el peticionario le exigió a la recurrida el pago de cuarenta y seis mil novecientos quince dólares con sesenta y cuatro centavos ($46,915.64) por concepto de honorarios de abogado más gastos incurridos y no reembolsados.[9] Le concedió siete (7) días para satisfacer la suma reclamada. No obstante, la recurrida incumplió, por lo que el peticionario presentó la reclamación de incumplimiento de contrato y cobro de dinero que dio génesis a la controversia de epígrafe.[10] Solicitó el pago de: (1) cinco mil doscientos setenta y cuatro dólares con treinta y nueve centavos ($5,274.39) por concepto de gastos de

---

[7] Íd., pág. 144. A la deuda de once mil cuatrocientos noventa y seis dólares con treinta y nueve centavos ($11,496.39) le acreditó el pago de quinientos dólares ($500.00) y le sumó los gastos incurridos en el envío de las dos (2) cartas.

[8] Íd. Véase además: Petición de *Certiorari* al Tribunal de Apelaciones, Apéndice, págs. 32-33.

[9] Íd., págs. 146-55. Junto con la carta, el peticionario incluyó la factura en la que desglosó la suma reclamada. La misiva fue recibida por uno de los hijos de la recurrida.

[10] La Demanda dio inicio al caso *Blanco Matos v. Colón Mulero*, GAC2011-0090. También figuró como demandante el Dr. Lidy López Morales quien reclamó el pago de sus honorarios periciales.

litigio; (2) treinta y cinco mil novecientos dieciocho dólares con setenta y cinco centavos ($35,918.75) por concepto de honorarios por servicios prestados y (3) seis mil doscientos dólares ($6,200.00) por concepto de honorarios periciales del Dr. Lidy López Morales.[11] Luego de varios trámites procesales, la recurrida presentó una Moción de Sentencia Sumaria. En cuanto al peticionario, sostuvo que al otorgar el Contrato Núm. 2 hubo una novación extintiva y que, por lo tanto, este únicamente tenía derecho a ser compensado desde el 1 de febrero de 2011, fecha en la que se otorgó el Contrato Núm. 2.[12] Por su parte, el peticionario se opuso y solicitó a su vez que se dictara Sentencia Sumaria a su favor.

Tras evaluar ambos escritos, el foro de instancia emitió una Resolución. Indicó que el otorgamiento del Contrato Núm. 2 no extinguió las obligaciones contraídas bajo el Contrato Núm. 1. Resolvió que la recurrida le adeudaba al peticionario la cantidad de diez mil novecientos setenta y cuatro dólares con treinta y nueve centavos ($10,974.39) por concepto de gastos y mil ochocientos treinta y siete dólares con cincuenta centavos ($1,837.50) por concepto de servicios prestados a partir del 1 de febrero de 2011. No obstante, señaló que los Contratos no contemplaban cómo se pagarían los honorarios de abogado en caso de que el peticionario renunciara a la representación legal de la recurrida. Por tal razón, señaló

---

[11] Íd., pág. 76.

[12] La recurrida sostuvo que el peticionario no tenía derecho a compensación alguna desde el 19 de noviembre de 2006, fecha en la que suscribieron el Contrato Núm. 1. Íd., págs. 124-25, 127.

una Vista Evidenciaria para determinar los honorarios de abogado a los cuales el peticionario tenía derecho a base de un *quantum meruit*.[13] Celebrada la Vista, el foro de instancia dictó una Sentencia en la que declaró Con Lugar la Demanda y desestimó la causa de acción presentada por el doctor López Morales.[14] A su vez, condenó a la recurrida a pagarle al peticionario treinta y cinco mil novecientos cuarenta y un dólares con veinticinco centavos ($35,941.25) por concepto de honorarios de abogado, diez mil novecientos setenta y cuatro dólares con treinta y nueve centavos ($10,974.39) por concepto de gastos y tres mil quinientos dólares ($3,500.00) de honorarios por temeridad.[15]

Inconforme, la recurrida apeló el dictamen. El foro *a quo* dictó una Sentencia en la que modificó el dictamen emitido por el foro de instancia. En síntesis, anuló ambos Contratos por entender que eran contrarios a la Ley Núm. 9 de 8 de agosto de 1974, 4 LPRA sec. 742. Además, eliminó la concesión de los treinta y cinco mil novecientos cuarenta y un dólares con veinticinco centavos ($35,941.25) por concepto de honorarios de abogado y los tres mil quinientos dólares ($3,500.00) de honorarios por temeridad.[16] Sostuvo que la única cuantía evidenciada a la cual tenía derecho el

---

[13] Íd., pág. 140. La Vista fue señalada para el 23 de enero de 2013.

[14] El foro de instancia entendió que la reclamación del Dr. López Morales estaba incluida en la causa de acción del peticionario.

[15] Íd., págs. 167-68. Se utilizó una tarifa de ciento setenta y cinco dólares ($175.00) por hora facturada.

[16] Íd., pág. 51

peticionario eran los diez mil novecientos setenta y cuatro dólares con treinta y nueve centavos ($10,974.39) por concepto de gastos incurridos y no reembolsados.

Inconforme, el peticionario presentó ante este Tribunal el recurso de *certiorari* que nos ocupa y planteó la comisión de los errores siguientes:

1. Erró la mayoría del TA al declarar nulo el Contrato de Servicios Profesionales.

2. Erró la mayoría del TA al descartar la toma de conocimiento judicial.

3. Erró la mayoría del TA al descartar la factura enviada a la recurrida.

4. Erró la mayoría del TA al no aplicar la figura del quantum meruit.

5. Erró la mayoría del TA al revocar la concesión de honorarios de abogado que el TPI concedió a favor de la parte demandante peticionaria.

Atendido el recurso, el 30 de enero de 2015, confirmamos el dictamen recurrido por encontrarnos igualmente divididos. Examinada la primera Moción de Reconsideración presentada por el peticionario, el 1 de junio de 2015, expedimos el auto solicitado. Contando con el beneficio de los alegatos de ambas partes, nos encontramos en posición de resolver el recurso sin ulterior trámite.

II

A.

Como primer error, el peticionario señaló que el foro *a quo* incidió al determinar que los Contratos de Servicios Profesionales suscritos por este y la recurrida eran nulos. No le asiste la razón.

Un contrato existe cuando concurren tres (3) requisitos, a saber: (1) el consentimiento de los contratantes; (2) un objeto cierto y (3) causa para la obligación. Art. 1213 del Código Civil de Puerto Rico, 31 LPRA sec. 3391. La autonomía de la voluntad es uno de los principios cardinales que rigen las relaciones contractuales en nuestro ordenamiento. Este principio concede a los contratantes la libertad de "establecer los pactos, cláusulas y condiciones que tengan por conveniente, siempre que no sean contrarios a las leyes, a la moral, ni al orden público". Art. 1207 del Código Civil de Puerto Rico, 31 LPRA sec. 3372.

La nulidad es una de las causas de ineficacia de los contratos. La nulidad de los contratos puede ser relativa o absoluta, dependiendo de las circunstancias que provocan la ineficacia. Los contratos que adolecen de nulidad absoluta son nulos *ab initio* e inexistentes, por lo que no producen efecto jurídico alguno independientemente del tipo de contrato que se trate y de la importancia que tenga para las partes contratantes. *Rodríguez Ramos, et al. v. ELA, et al.*, 190 DPR 448, 456 (2014); *De Jesús González v. A.C.*, 148 DPR 255, 264 (1999).

Según indicamos, uno de los elementos constitutivos de todo contrato es la causa. Si bien nuestro Código Civil no define qué es la causa contractual, esta "se ha equiparado a la contestación de la interrogante, ¿por qué me obligué?". M.E. García Cárdenas, *Derecho de obligaciones y contratos*, San Juan, MJ Editores, 2012, pág. 419. En los contratos onerosos, se

entiende por causa la contraprestación o la promesa de una contraprestación; en los contratos remuneratorios, el servicio o beneficio que es remunerado. 31 LPRA sec. 3431. En cuanto al requisito de causa, no basta con que el contrato en efecto tenga una causa; esta tiene que ser lícita. El Art. 1227 del Código Civil dispone que "los contratos sin causa o con causa ilícita no producen efecto alguno. Es ilícita cuando se opone a las leyes o a la moral." 31 LPRA sec. 3432. Véase: *Rosario Rosado v. Pagán Santiago*, 196 DPR 180, 188 (2016); *Col. Int´l Sek P.R., Inc. v. Escribá*, 135 DPR 647, 667 (1994).

Este Tribunal ha reiterado que el Contrato de Servicios Legales es un contrato *sui generis*. *In re Vélez Lugo*, 180 DPR 987, 995 (2011). Distinto a cualquier Contrato de Arrendamiento de Servicios, el de servicios legales está supeditado a un sinnúmero de consideraciones éticas que son intrínsecas a la profesión legal. *In re Acevedo Álvarez,* 178 DPR 685, 690 (2010); *In re Delannoy Solé,* 172 DPR 95, 101-102 (2007). Estas consideraciones éticas tienen el efecto de limitar la autonomía de la voluntad de los contratantes en este tipo de contrato. *Nassar Rizek v. Hernández*, 123 DPR 360, 370 (1989). Particularmente, la fijación de honorarios de abogado es uno de los aspectos de los Contratos de Servicios Legales directamente afectados por consideraciones éticas. Véase: Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 24; *In re Díaz Lamoutte*, 106 DPR 450, 455 (1977).

Con respecto al pacto de honorarios contingentes, el abogado que acepta ser remunerado a base de honorarios

contingentes es compensado si gana el caso, si acontece alguna de las contingencias pactadas y en proporción a la cuantía adjudicada por el tribunal. *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 DPR 545, 560 (1992). Independientemente del tiempo y esfuerzo que haya dedicado, si el abogado pierde el caso en los méritos "no tiene derecho a cobrar nada pues el pacto de cuotalitis asocia al abogado a la suerte del proceso". Íd.

La Ley Núm. 9 de 8 de agosto de 1974, 4 LPRA sec. 742, impone límites porcentuales a la facultad del abogado de cobrar honorarios contingentes; específicamente, en acciones de daños y perjuicios. En lo atinente a la controversia que nos ocupa, esta dispone que:

> **Ningún abogado cobrará honorarios de naturaleza contingente en acciones de daños y perjuicios una cantidad que, en cualquier concepto, exceda del veinticinco por ciento (25%) del producto final de la sentencia, transacción o convenio si el cliente es menor de edad o incapacitado mental** o del treinta y tres por ciento (33%) del producto final de la sentencia, transacción o convenio si se trata de cualquier otro cliente. No obstante, lo anteriormente dispuesto, cuando se trate de clientes que sean menores de edad o incapacitados mentales, el tribunal podrá autorizar el cobro de honorarios contingentes hasta un treinta y tres por ciento (33%) del producto final de la sentencia, transacción o convenio si el abogado así lo solicita y presenta justificación para ello. 4 LPRA sec. 742.

El precitado estatuto prohíbe expresamente el cobro de una cantidad en exceso de lo allí autorizado. Asimismo, impone a los tribunales la obligación de velar por su estricto cumplimiento al disponer que su violación será causa para una acción disciplinaria ante este Tribunal y que **"[t]odo contrato o convenio otorgado con el fin de evadir la prohibición […] será nulo y no tendrá valor alguno"**. 4 LPRA sec. 742. (Énfasis

suplido). Véase además, *In re Acevedo Álvarez,* supra, pág. 700.

En el caso ante nos, la recurrida contrató al peticionario para que la representara en un pleito que esta había instado ante el Tribunal de Distrito federal por sí y en representación de sus hijos menores de edad, CAAC y AOC.[17] Tras desistir de su reclamación ante dicho foro, la recurrida y el peticionario suscribieron el Contrato Núm. 2. En dicho Contrato se pactaron los términos y condiciones que regirían su relación abogado-cliente durante el trámite de la Demanda que la recurrida había presentado ante el foro de instancia por los mismos hechos. De una lectura del mismo, resulta claro que el peticionario se obligó a representar legalmente a la recurrida y a sus hijos menores de edad.[18] En cuanto a los honorarios contingentes, tanto el Contrato Núm. 1 como el Contrato Núm. 2 disponían lo siguiente:

> En el caso que se logre cobrar alguna cantidad de dinero como resultado de las gestiones de EL ABOGADO, los honorarios de abogado serán el **TREINTA Y TRES PORCIENTO (33%) de todas las cantidades recobradas.** (Énfasis nuestro)

El peticionario fijó sus honorarios en treinta y tres por ciento (33%) de **todas las cuantías recobradas**

---

[17] La recurrida presentó la Demanda ante el Tribunal Federal para el Distrito de Puerto Rico "on her own behalf and as parent with patria potestas and custody over minor plaintiff [CAAC] and [AOC]". Reclamó indemnización en daños y perjuicios sufridos como consecuencia de la muerte de otro de sus hijos, producto de alegada impericia médica. Íd., pág. 233.

[18] El Contrato Núm. 2 comenzaba con la cláusula siguiente: "Yo, Madeline Colón Mulero, a nombre mío y de mis hijos menores de edad [CAAC] Y [AOC], en adelante "EL CLIENTE" por la presente designo a licenciado LUIS N. BLANCO MATOS, en adelante "EL ABOGADO", a representarme legalmente en la demanda que persigo en el Tribunal de Primera Instancia, sala de Guayama, bajo el número GDP2010-0076. Íd., pág. 78.

independientemente de que hubiesen sido adjudicadas a la recurrida o a los hijos de esta. En la Vista Evidenciaria celebrada el 23 de julio de 2013, a preguntas del abogado de la recurrida, el peticionario reconoció que en el pacto de honorarios contingentes estaban incluidos los hijos de la recurrida. En cuanto a este particular, declaró que:

> Lcdo. Martin: Mire, y en ese apar[tado] que usted dice 33% también estaban incluidos los menores.
>
> Lcdo. Blanco: S[í].
>
> . . .
>
> Lcdo. Martin: Y usted se iba a beneficiar en el caso de que usted en su momento ganara la demanda, usted se iba a beneficiar de lo que cobraran los cuatro, verdad que sí.
>
> Lcdo. Blanco: Yo entiendo que sí.[19]

Por lo tanto, es evidente que al pactar sus honorarios de abogado a razón de "treinta y tres por ciento (33%) de todas las sumas recobradas", de haber recobrado alguna cantidad como resultado de la reclamación, el peticionario hubiera cobrado honorarios contingentes en exceso de lo autorizado por la Ley Núm. 9 de 8 de agosto de 1974, *supra*.

Resolvemos que este tipo de pacto global de honorarios contingentes es nulo e invalida el Contrato de Servicios Legales. Cuando un abogado representa a una persona que ha instado una reclamación en daños y perjuicios por sí y en representación de uno o varios menores de edad, el abogado no puede pretender cobrar honorarios contingentes a razón del

---

[19] Íd., pág. 332. La madre de la recurrida también figuraba como demandante.

treinta y tres por ciento (33%) de todas las sumas recobradas. Ello, debido a que ningún abogado puede cobrar honorarios contingentes en exceso del veinticinco por ciento (25%) a menores de edad, salvo que haya obtenido autorización judicial. En ese sentido, con respecto a los menores de edad, el abogado que suscribe un Contrato de Servicios Profesionales puede fijar sus honorarios contingentes en un máximo de hasta veinticinco por ciento (25%). Es el Tribunal, a solicitud del abogado y de entender que existe justificación para ello, quien puede autorizarlo a cobrar honorarios en exceso del veinticinco por ciento (25%) y hasta un máximo de treinta y tres por ciento (33%). Cabe mencionar que ni el peticionario alega ni surge de los autos que el tribunal lo hubiera autorizado a cobrar honorarios contingentes en exceso de un veinticinco por ciento (25%) con respecto a los hijos de la recurrida. Por lo tanto, y de conformidad con la Ley Núm. 9 de 8 de agosto de 1974, *supra*, tanto el Contrato Núm. 1 como el Contrato Núm. 2 son nulos.

B.

En su cuarto señalamiento de error, cuya resolución hace innecesaria la discusión del segundo y tercer señalamiento, el peticionario arguyó que el foro *a quo* erró al no aplicar la Doctrina de *Quantum Meruit*.

El precepto legal *quantum meruit* significa "tanto como se merece". I. Rivera García, *Diccionario de Términos Jurídicos,* 3ra ed. rev., San Juan, Ed. Lexis, 2000, pág. 395. Esta máxima reconoce el derecho que tiene toda persona a reclamar el valor razonable de los servicios que ha prestado. Véanse por ejemplo:

*Pérez v. Col. Cirujanos Dentistas de P.R.,* supra; *Ex parte Capó y Rivera,* 59 DPR 899 (1942); *Ruiz de Val v. Morales,* 43 DPR 283 (1932).* En nuestro ordenamiento jurídico, la acción para reclamar el valor razonable de servicios a base de un *quantum meruit* emana del Art. 1473 del Código Civil, el cual dispone en parte que:

> En cuanto a los servicios profesionales, se estará, para la remuneración de los mismos, a lo convenido entre las partes; cuando no hubiere convenio y surgieren diferencias, la parte con derecho a la remuneración podrá reclamar y obtener en juicio de la otra parte, ante cualquier corte de jurisdicción competente, el importe razonable de dichos servicios. 31 LPRA sec. 4111; Véase además: *Pérez v. Col. Cirujanos Dentistas de P.R.,* supra, págs. 557-558.

De una lectura del precitado artículo, se puede colegir que provee un remedio en restitución basado en elementos de justicia. Este procura evitar el enriquecimiento injusto de quien recibe un servicio permitiéndole al que lo presta la posibilidad de reclamar su valor razonable cuando no se hubiera pactado un precio cierto.

Como norma general, un abogado puede reclamar compensación por los servicios que ha prestado a base de un *quantum meruit* cuando no exista un pacto expreso de honorarios o cuando el contrato haya sido invalidado por alguna irregularidad en la forma de ejecutarse.[20] Véanse: *Pérez v. Col. Cirujanos Dentistas de P.R.,* supra, pág. 561; *Colón v. All Amer. Life & Cas. Co.,* 110 DPR 772, 777 (1981). *A contrario*

---

[20] En Estados Unidos, la Sección 39 del RESTATEMENT THIRD OF CONTRACTS reconoce este derecho al disponer que: "If a client and lawyer have not made a valid contract providing for another measure of compensation, a client owes a lawyer who has performed legal services for the client the fair value of the lawyer's services".

*sensu*, cuando exista un pacto de honorarios, independientemente de su naturaleza, de ordinario, aplica el principio de *pacta sunt servanda* por lo que el abogado no tiene derecho a reclamar a base de un *quantum meruit*. Arts. 1044 y 1473 del Código Civil, 31 LPRA secs. 2994, 4111.

Este Tribunal ha determinado que un abogado tiene derecho a reclamar honorarios a base de un *quantum meruit* en varios escenarios. Examinémoslos brevemente.

En *Ruiz del Val v. Morales*, supra, expresamos que un abogado que es destituido por su cliente, antes de haber culminado la labor para la cual fue contratado, tiene derecho a ser compensado a base de un *quantum meruit*. Específicamente, resolvimos que:

> [S]i se emplea a una persona para celebrar una transacción, su destitución no le da derecho a obtener la cantidad mencionada en el contrato, a menos que el asunto quede definitivamente transigido. La persona despedida puede demandar sobre un *quantum meruit*, pero raras veces tendría derecho a toda la cantidad aludida en el contrato, especialmente en ausencia de prueba sobre la consumación del compromiso, o de otras materias en que un cliente pueda haber sido ayudado por su abogado. Íd., pág. 287.

En *Colón v. All Amer. Life & Cas. Co.*, supra, un abogado reclamó el pago de los honorarios contingentes que había fijado. Este había obtenido un dictamen favorable para su cliente en virtud del cual se le reconoció el derecho a recibir beneficios correspondientes a una póliza de seguro de vida y otra de seguro de incapacidad. Sin embargo, observamos que los beneficios a los que tenía derecho el cliente, y como corolario los honorarios del abogado, dependían en última instancia de la salud posterior del cliente. Debido a que los

honorarios del abogado dependían de contingencias ajenas a su labor, invalidamos el pacto *sub silentio*. Consecuentemente, resolvimos que cuando no se pudieran estimar los honorarios de abogado a base del pacto de *cuotalitis*, o pacto de contingencia, los tribunales venían obligados a estimar una compensación razonable que retribuyera adecuadamente la labor realizada por el abogado. Íd., pág. 777. Indicamos que le correspondía al abogado pasar prueba sobre el tiempo dedicado a la tramitación del pleito y el valor razonable de las horas invertidas en su consecución. Íd.

En *Pérez v. Col. Cirujanos Dentistas de P.R.*, supra, un abogado fue contratado para llevar un pleito de cobro de dinero. Este pactó honorarios contingentes los cuales fijó en quince por ciento (15%) más tres mil dólares ($3,000.00) por concepto de *retainer fee*. El abogado desistió de la reclamación a petición de su cliente. Posteriormente, le remitió una factura requiriendo el pago de los servicios profesionales que había prestado. El cliente se negó a pagar la suma reclamada pues entendía que bajo el pacto de *cuotalitis* que habían suscrito no tenía obligación de satisfacerla. Así las cosas, el abogado instó una acción de cobro de dinero. Atendido el recurso presentado ante nos, resolvimos que un abogado contratado bajo un pacto de honorarios contingentes que no culmina su gestión profesional por haber desistido de la reclamación, por instrucciones de su cliente, tenía derecho a ser compensado a base del valor razonable de los servicios que hubiera prestado, conforme al

Art. 1473 del Código Civil, *supra*, y el Canon 25 del Código de Ética Profesional, *supra*.

Es menester indicar que en esta acción de cobro de dinero el peso de la prueba recae sobre el abogado. *Colón v. All Amer. Life & Cas. Co.,* supra, pág. 777. Es este quien alega tener derecho a ser remunerado y quien perdería todo derecho a ser compensado de no presentarse evidencia alguna. 32 LPRA Ap. VI, R.110(a), (b). Por tal razón, le corresponde al letrado presentar prueba, sea directa o circunstancial, sobre: (1) las gestiones profesionales que alegadamente realizó a beneficio de su cliente; (2) las horas o fracción de tiempo que le dedicó a cada una de dichas gestiones y (3) el valor razonable de las horas dedicadas. Véase: *Colón v. All Amer. Life & Cas. Co.,* supra.

Evaluada la prueba, los tribunales deben fijar los honorarios a los que tenga derecho el reclamante y evaluar su razonabilidad tomando en consideración, *inter alia*, los factores enumerados en el Canon 24 del Código de Ética Profesional, *supra*, entiéndase:

    (1) el tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso;

    (2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes;

(3)  los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares;

(4)  la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado;

(5)  la contingencia o certeza de la compensación; y

(6)  la naturaleza de la gestión profesional, si es puramente casual o para un cliente constante.

En fin, hemos resuelto que los honorarios de abogado podrán ser determinados a base de un *quantum meruit* cuando: (1) el pacto de honorarios haya sido invalidado por alguna irregularidad en la forma de ejecutarse; (2) el abogado haya sido destituido por su cliente antes de haber culminado la gestión para la cual fue contratado ó (3) el abogado haya tenido que desistir voluntariamente de la reclamación, por instrucciones de su cliente, aun si dicha eventualidad no se contempló en el Contrato de Servicios Legales. Ahora bien, ¿Un abogado que renuncia a la representación legal de su cliente, antes de haber culminado la gestión profesional para la cual fue contratado y por la cual pretendía cobrar honorarios contingentes, tiene derecho a reclamar honorarios a base de un *quantum meruit*?

Al enunciar nuestra *ratio decidendi* en *Pérez v. Col. Cirujanos Dentistas de P.R.*, supra, conferimos valor persuasivo a las decisiones de otras jurisdicciones estatales en cuanto al tema. Específicamente, reconocimos que muchas de las jurisdicciones estatales habían reconocido que el abogado empleado a base del pacto de *cuotalitis* podía reclamar honorarios a base de un *quantum meruit* cuando este no llegaba

a completar la labor para la cual fue contratado por haber desistido del pleito en virtud de los deseos de su cliente. Véase: Íd., pág. 561 esc. 13. Cabe examinar, entonces, cómo han resuelto otras jurisdicciones estatales la controversia de marras.

Un sinnúmero de jurisdicciones estatales han reconocido que el abogado que renuncia a la representación legal de su cliente, antes de haber culminado su gestión profesional, tiene derecho a ser compensado si demuestra que la renuncia estuvo justificada. Véanse por ejemplo: *Cobell v. Jewell,* __ F.3d __, 2017 WL 421905, págs. 30-32 (D.D.C. January 31, 2017) (El que el abogado principal en un pleito de clase hubiera excluido a otro abogado de la tramitación del pleito y le hubiera dejado de asignar trabajo, a pesar de su disponibilidad, justificaba su renuncia); *Pritt v. Suzuki Motor Co., Ltd.,* 204 W. Va. 388, 513 S.E.2d 161 (1998) (El que un cliente le requiriera a su abogado asociarse con otro letrado, con el cual aquel no podía cooperar cordialmente, justificó su renuncia); *Kopelman and Associates, L.C. v. Collins,* 196 W. Va. 489, 496, 473 S.E.2d 910, 917 (1996) ("Obviamente, si un abogado renuncia por justa causa, no cabe duda de que él o ella pueden ser compensados a base de un *quantum meruit*") (Traducción nuestra); *Joseph Benner Assocs., Inc. v. Starmaker Entm't, Inc.* 82 F.3d 55, 57 (2d Cir. 1996) (El cliente insistió en que su hijo participara del caso. El hijo del cliente, a su vez, contrató otro abogado que no cooperaba con el abogado que originalmente ostentaba la

representación legal, lo cual constituyó justa causa para su renuncia); *Leoris & Cohen, P.C. v. McNiece,* 226 Ill.App.3d 591, 168 Ill.Dec. 660, 589 N.E.2d 1060, 1065 (1992) (Una carta de la cual surgía una disputa de honorarios es insuficiente *per se* para establecer si la relación abogado-cliente se había deteriorado completamente); *In re Agent Orange Prod. Liab. Litig.,* 571 F.Supp. 481, 482 (E.D.N.Y. 1983) (El que un abogado no pudiera costear los gastos del litigio justificó su renuncia); *Ambrose v. Detroit Edison Co.,* 65 Mich. App. 484, 488-489, 237 N.W.2d 520, 522-523, 88 A.L.R.3d 239 (1975) (Un abogado renunció luego de que su cliente le enviara un telegrama denigrándolo, humillándolo, imputándole la comisión de fraude e indicándole que no aguantaría más su abuso. Dicho comportamiento, junto con el hecho de que el cliente incumplió con una orden judicial y denegó una oferta de transacción sin razón alguna, ilustró una total falta de cooperación para con su abogado que justificaba su renuncia); *Leighton v. New York, S. & W. R. Co.,* 455 F.2d 389 (2nd Cir. 1972); *Schwartz v. Jones,* 58 Misc. 2d 998, 297 N.Y. S.2d 275 (Sup. Ct. 1969); *Fairchild v. General Motors Acceptance Corp.,* 254 Miss. 261, 179 So. 2d 185 (1965); *Empire State Ins. Co. v. Chafetz*, 302 F. 2d 828, 829 (5th Cir. 1962); *Matheny v. Farley,* 66 W.Va. 680, 682-683, 66 S.E. 1060, 1061 (1910).

Igualmente, otro sinnúmero de jurisdicciones estatales han resuelto que un abogado que renuncia voluntariamente, y sin justa causa, a la representación legal de su cliente, renuncia el derecho de recobrar honorarios por los servicios

que haya prestado. Véanse por ejemplo: *In re Petition for Distribution of Attorney's Fees between Stowman Law Firm, P.A.,* 870 N.W.2d 755, 766 (2015) (El que un cliente ejerza su derecho a rechazar una oferta de transacción no constituye justa causa *per se* para que su abogado renuncie); *Ryan v. State,* 112 Wash.App 896, 902-903, 51 P.3d 175, 178 (2002)(La carencia de tiempo para trabajar el caso sin más no constituye justa causa para renunciar); *Bell & Marra, pllc v. Sullivan*, 2000 MT 206, 300 Mont. 530, 6 P.3d 965 (2000) (Un abogado advirtió a su cliente que si no firmaba el nuevo pacto de honorarios renunciaría al caso. La negativa del cliente no constituye justa causa que justifique compensar al letrado); *Augustson v. Línea Aérea Nacional-Chile S.A. (LAN-Chile)*, 76 F.3d 658, 665-666 (5th Cir. 1996) (El que un cliente opte por litigar su caso en lugar de transigirlo no es razón que justifique la renuncia del abogado); *Faro v. Romani,* 641 So. 2d 69, 71 (Fla. 1994); *Ausler v. Ramsey,* 73 Wash.App. 231, 238-239, 868 P.2d 877, 881 (1994) (El que un cliente no contestara una sola carta no justificaba la renuncia del abogado; máxime cuando había evidencia de otras comunicaciones entre estos); *Staples v. McKnight,* 763 S.W.2d 914, 917 (Tex. App. Dallas 1988), writ denied, (Sept.6, 1989) (La creencia de que su cliente tenía la intención de cometer perjurio no requería ni justificaba la renuncia de su abogado); *Henican, James and Cleveland v. Strate,* 348 So. 2d 689, 692 (La. Ct. App. 4th Cir. 1977), writ denied, 350 So. 2d 1213 (La. 1977); *Burston v Pinkis,* 25 N.Y.S.2d 12, 13 (App. Term 1941).

Nos persuade la existencia de "justa causa" como criterio determinante en estos casos.[21] Como corolario, lo adoptamos y resolvemos que, salvo las partes pacten otra cosa, un abogado que renuncia voluntariamente a la representación legal de su cliente, antes de culminar la gestión profesional para la cual fue contratado y por la cual pretendía cobrar honorarios contingentes, tiene derecho a ser compensado por sus servicios a base de un *quantum meruit* siempre y cuando demuestre que hubo justa causa para la renuncia.[22] La existencia de justa causa será materia de prueba a ser determinada caso a caso por los tribunales. Dicha determinación deberá estar basada en la totalidad de las circunstancias, tomando en consideración los hechos del caso, las razones específicas para la renuncia y las circunstancias particulares que rodearon la misma, *inter alia*.[23] En ese sentido, los planteamientos estereotipados y/o las excusas generalizadas, que no estén sustentadas por la prueba, no constituirán justa causa. Adelantamos que el mero hecho de que la Moción de Renuncia de Representación Legal presentada por un abogado sea aceptada no justifica

---

[21] José Luis Lacruz Berdejo señala que el contrato de servicios profesionales, particularmente el de las llamadas profesiones liberales, se puede extinguir siempre por denuncia unilateral del client[e], indemnizando "y por la del prestador del servicio, por justa causa…". J. Lacruz Berdejo, *Elementos del Derecho Civil*, Barcelona, Ed. Librería Bosch, T. II, Vol. III, pág. 207.

[22] Véase: Anotación, *Circumstances under which attorney retains right to compensation notwithstanding voluntary withdrawal from case,* 53 A.L.R. 5th 287 (1997).

[23] Cabe recordar que el Código de Ética Profesional, 4 LPRA Ap. IX (1970), impone al abogado el deber de renunciar bajo determinadas circunstancias. Véanse por ejemplo: Cánones 7, 8, 17, 21, 22 y 27.

automáticamente que este sea compensado a base de un *quantum meruit*.

Un abogado que es destituido por su cliente y/o que desiste voluntariamente de la reclamación por instrucciones de su cliente, tiene derecho a ser compensado a base de un *quantum meruit*. *Pérez v. Col. Cirujanos Dentistas de P.R.,* 131 DPR 545 (1992); *Ruiz de Val v. Morales,* 43 DPR 283 (1932). Reconocerle un derecho automático similar al abogado que **renuncia voluntariamente**, antes de culminar la gestión profesional para la cual fue contratado y por la cual pretendía cobrar honorarios contingentes, desvirtuaría el contrato de servicios profesionales. La figura de *quantum meruit* podría ser utilizada impropiamente por abogados que, luego de litigar el caso por un tiempo se dan cuenta de que no tienen un buen caso. Estos pueden decidir reducir su riesgo de no cobrar lo pactado y renunciar por alguna razón de poca trascendencia para reclamar posteriormente honorarios por los servicios que prestaron. Por otro lado, prohibirlo absolutamente colocaría a los abogados en una posición vulnerable ante actuaciones de sus clientes. Ello, debido a que aun teniendo razones legítimas para renunciar a la representación legal de su cliente, el abogado podría optar por no hacerlo por el mero hecho de no perder el tiempo, dinero y esfuerzo que invirtió en la tramitación del caso.

Requerirle a un abogado que demuestre justa causa para su renuncia, como condición para otorgarle los honorarios alegadamente adeudados, implica emplear la misma figura

jurídica (i.e. justa causa) en dos (2) contextos distintos, a saber: (1) al evaluar la procedencia de una Moción de Renuncia de Representación Legal y (2) dentro de la acción de Incumplimiento de Contrato y Cobro de Dinero que tiene a su disposición todo abogado para cobrarle a quien fuera su cliente los honorarios adeudados, ya sea en virtud de un contrato de servicios profesionales o bajo la doctrina de *quantum meruit*. Sin embargo, se trata de escenarios distintos en los que imperan consideraciones distintas, razón por la cual los criterios aplicables deben ser distintos.[24]

Por un lado, cuando el foro de instancia atiende una Moción de Renuncia de Representación Legal, los intereses realmente en juego son los del cliente del abogado que solicitó la renuncia. El cliente es la parte en el pleito. De autorizarse la renuncia de su abogado, el cliente es quien corre el riesgo de no poder probar su reclamación o de no poder defenderse adecuadamente de una reclamación que pesa en su contra. El riesgo al que se expone el cliente ante la renuncia de su abogado es directamente proporcional a la complejidad del caso y a la etapa procesal en la que se encuentre el mismo. Es decir, mientras más complejo sea y más

---

[24] La Corte de Apelaciones de Estados Unidos para el Quinto Circuito se expresó en cuanto a la diferencia entre la justa causa que se requiere para renunciar a la representación legal y la justa causa que justifica el que un abogado sea compensado luego de haber renunciado. Véase: *Bell & Marra, pllc v. Sullivan*, 300 Mont. 530, 540 (2000) citando con aprobación a *Augustson v. Línea Aérea Nacional-Chile (LAN-Chile)*, 76 F.3d 658, 664 (5th Cir. 1996).
Los criterios y exigencias de los Cánones 20 y 25 de Ética Profesional, 4 LPRA Ap. IX, Cs. 20 y 25, con respecto a la Moción de Renuncia de Representación Legal y la acción de Cobro de honorarios, respectivamente, permanecen inalterados.

adelantado esté el proceso judicial mayor será el riesgo que correrá el cliente de sufrir algún perjuicio ante la renuncia de su abogado. Es por ello que "la voluntad contractual de las partes para finalizar la relación abogado-cliente está atenuada por otros intereses importantes" tales como: (1) garantizar una solución justa y rápida de las controversias judiciales y (2) evitar que una parte quede sin asistencia de abogado en etapas importantes del proceso por razones triviales o de poca importancia. S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria*, San Juan, Ed. Situm 2016, pág. 315.

Al adjudicar una Moción de Renuncia de Representación Legal, el rol principal del foro primario debe ser: (1) evaluar si concederla causará disloques significativos en la tramitación del caso para evitar, de esta manera, dilaciones inapropiadas en los procesos judiciales por renuncias inoportunas y (2) garantizar la asistencia de un abogado cuando conceder la renuncia pudiera afectar adversamente a una parte. Íd., págs. 311 y 315. Por lo tanto, en el contexto de una solicitud de renuncia, lo fundamental es salvaguardar los derechos sustantivos del cliente y promover la celeridad y economía en los procesos judiciales; el derecho que el abogado tenga a una compensación no puede tener mayor prominencia en esta etapa. Ello es consistente con el texto de la Regla 9.2 de las de Procedimiento Civil, la cual dispone en parte que: "[e]l tribunal tendrá facultad para rechazar la renuncia solicitada [por el abogado] en aquellos casos excepcionales

en que estime que los derechos de una parte podrían verse seriamente lesionados o que se retrasaría indebidamente el procedimiento". 32 LPRA Ap. V., R. 9.2.

Por otro lado, el abogado al que le adeuden honorarios debe entablar una demanda de Incumplimiento de Contrato y/o Cobro de Dinero contra su cliente. Esta reclamación, reconocida en el Canon 25 de Ética Profesional, *supra,* debe presentarse de forma independiente y posterior al pleito para el cual el abogado fue contratado. Íd., pág. 341. Véase: *In re Criado Vázquez,* 155 DPR 436, 457 (2001); *Pagán de Joglar v. Cruz Viera*, 136 DPR 755, 755 (1994); *Pérez Marrero v. Colegio de Cirujanos Dentistas de Puerto Rico,* 131 DPR 545, 551 y 561 (1992); *Nassar Rizek v. Hernández*, 123 DPR 360, 373 (1941). En tal reclamación, el abogado puede solicitar los honorarios adeudados ya sea en virtud de un contrato de servicios profesionales o bajo la doctrina de *quantum meruit*, en ausencia de contrato. Art. 1473 del Código Civil, 31 LPRA sec. 4111. Véase además, *Pérez Marrero v. Col. Cirujanos Dentistas de P.R.,* supra, pág. 557-558.

El abogado a quien le adeudan honorarios está impedido de reclamarlos dentro del proceso judicial para el cual fue contratado. Íd., pág. 340. Ello implicaría acumular una reclamación de cobro de honorarios en el caso para el cual el abogado fue contratado y en el cual este simplemente no es parte. Íd. Lo anterior dilataría innecesariamente la resolución de la reclamación originalmente instada mediante la acumulación de una reclamación colateral por una persona

que, de nuevo, no es parte. Asimismo, laceraría la relación de confianza que debe existir en toda relación abogado-cliente. Íd.

Discutidas las consideraciones subyacentes a la Moción de Renuncia de Representación Legal y delimitado el vehículo procesal que tiene a su disposición un abogado para reclamar honorarios adeudados, es evidente que la "razón justificada e imprevista" que debe tener el abogado para solicitar autorización para renunciar, según establece el Canon 20 de Ética Profesional, *supra*, no puede utilizarse como criterio para determinar automáticamente si el letrado que renuncia voluntariamente tiene derecho a ser compensado bajo la doctrina de *quantum meruit*.

En primer lugar, de ordinario, los tribunales resuelven las Mociones de Renuncia de Representación Legal sumariamente. Son pocas las instancias en las que se cita a las partes a una conferencia para auscultar las razones por las cual el abogado solicita la renuncia y determinar si estas son justificadas. Ciertamente, el Canon 20 de Ética Profesional no requiere que se celebre una vista y este Tribunal tampoco lo ha requerido. Condicionar la compensación del abogado a las razones que este ofrezca para su renuncia en la Moción de Renuncia de Representación Legal lo colocaría en desventaja. Este se vería obligado a someter prueba o a solicitar una Vista Argumentativa o Evidenciaria en algunos casos. Lo anterior, a su vez, constituiría una acumulación *de facto* de una reclamación del abogado contra su cliente, dentro de la

reclamación para la cual el abogado fue contratado y en la cual este no es parte. La reclamación para la cual el abogado fue contratado se vería afectada por un asunto colateral que no guarda relación alguna con los méritos del caso. Obligar al abogado que desea renunciar a seguir dicho curso de acción atentaría contra la solución justa, rápida y económica de los procedimientos.

En segundo lugar, consideraciones éticas también impiden que se utilice el criterio del Canon 20 para determinar automáticamente si el letrado que renuncia voluntariamente tiene derecho a ser compensado bajo la doctrina de *quantum meruit*. El abogado no es parte en el pleito en el cual presenta la Moción de Renuncia de Representación Legal. A *contrario sensu*, representa los intereses de su cliente. Por lo tanto, por más razones que tenga el abogado para solicitar la renuncia, mientras no sea relevado por el tribunal, este le debe completa lealtad a su cliente. El abogado que solicita autorización para renunciar estaría obligado a exponer en su Moción de Renuncia de Representación Legal las razones concretas que motivan la misma, en aras de intentar justificar su solicitud. Ello, trastocaría a su vez la relación de confianza y lealtad que debe caracterizar la relación abogado-cliente. En caso de que el foro de instancia entienda que las razones ofrecidas por el letrado no son suficientes, el abogado estaría obligado a continuar representando a su cliente y a sobrellevar una relación abogado-cliente que posiblemente ha sido vulnerada y en muchos casos quebrantada.

Por lo tanto, al evaluar si una renuncia estuvo justificada a los fines de compensar la labor del abogado a base de un *quantum meruit*, es indispensable indagar las razones concretas que motivaron la disolución definitiva de la relación abogado-cliente. Lo anterior, claro está, sin perjuicio a que el privilegio abogado-cliente pueda ser invocado, en aquellos casos en los que se apropiado.[25] La alegada justa causa debe ser examinada con más rigor al determinar si el abogado que renunció tiene derecho a ser compensado *vis-à-vis* a la forma en la que debe evaluarse al considerar su solicitud de renuncia.

Vista la normativa anterior, nos corresponde determinar si la renuncia del peticionario estuvo justificada de forma tal que tenga derecho a ser compensado por los servicios que prestó a la recurrida. Cabe destacar que el motivo de la renuncia del peticionario era uno de los criterios sobre los cuales este venía obligado a pasar prueba. Ello, en virtud de la Resolución que emitió el foro de instancia el 13 de diciembre de 2012, en la que indicó que:

> "**el Tribunal celebrará una vista evidenciaria para determinar los honorarios a base de un *quantum meruit*, por el valor de los servicios prestados, tomando en consideración** la labor y los esfuerzos realizados por

---

[25] Cuando se invoque el privilegio abogado-cliente para evitar que el abogado divulgue alguna comunicación presuntamente confidencial, el Tribunal deberá determinar si existe tal privilegio, conforme a la Regla 109(A) de Evidencia de 2009, 32 LPRA Ap. VI, R. 109(A). Debemos recordar que el privilegio abogado-cliente no existe si, *inter alia*: (1) los servicios del abogado fueron solicitados u obtenidos para permitir o ayudar a cualquier persona a cometer o planificar la comisión de un delito o fraude y (2) la comunicación es pertinente a una controversia relacionada a una violación de los deberes mutuos que surjan de la relación abogado-cliente. 32 LPRA Ap. VI, R. 503(c). Si el privilegio no existe, la comunicación en cuestión no está protegida y, como corolario, el abogado puede divulgarla.

el abogado en la tramitación de los pleitos, las razones que motivaron el desistimiento varios años después de presentado el pleito, **las razones que motivaron la renuncia de representación legal**, la complejidad del pleito para el cual fue contratado el Lcdo. Blanco Matos, si los gastos incurridos para la tramitación del pleito son cónsonos con la naturaleza del pleito, entre otras que estime pertinentes el Tribunal".[26]

Tomando esto en consideración, nos encontramos en posición de resolver.

De un análisis integral de la prueba que tuvo ante sí el foro de instancia se puede colegir que no hubo justa causa para ninguna de las dos (2) renuncias del peticionario. Para justificar la primera solicitud de renuncia, el peticionario única y exclusivamente indicó que existían "diferencias irreconciliables" entre este y la recurrida. Esta explicación es el tipo de planteamiento estereotipado que, a pesar de justificar la concesión de autorización para renunciar en ciertos casos, no justifica una ulterior compensación a base de un *quantum meruit*. Así, resta por examinar si el peticionario demostró justa causa para la segunda renuncia, aquella que definitivamente culminó con la relación abogado-cliente entre este y la recurrida.

Por un lado, evaluada la totalidad del testimonio del peticionario, al cual el foro de instancia le otorgó completa credibilidad y certeza, resulta forzoso concluir que no demostró justa causa para su renuncia. Este declaró de forma generalizada que tanto su secretaria como él llamaron a la recurrida y que esta no respondió las llamadas telefónicas.

---

[26] Petición de *Certiorari*, Apéndice, pág. 140.

Indicó que a raíz de ello se vio obligado a enviarle una carta el 24 de marzo de 2011. En dicha misiva, le requirió que se comunicara pues necesitaba su cooperación para cumplir con una serie de gestiones que estaban pendientes en relación a su caso y le apercibió que renunciaría si no se comunicaba con él.[27] A preguntas de su abogado sobre las gestiones específicas que estaban pendientes y para las cuales necesitaba la cooperación de la recurrida, el peticionario señaló que:

> Lcdo. Blanco: [H]abían términos que llevar a cabo ciertas gestiones que se tenían que cumplir, en adición los demandados, que eran los mismos demandados de la corte federal, habían enviado eh, eh, descubrimiento escrito, interrogatorios, requerimientos para producción de documentos, que teníamos un término para cumplir. Yo para eso necesitaba la cooperación de la Sra. Colón Mulero y no la estaba obteniendo.[28]

En cuanto a cómo se veía limitada la representación del peticionario por la alegada falta de cooperación de la recurrida, el peticionario indicó que:

> Lcdo. Blanco: Bueno yo no podía cumplir con las órdenes del tribunal, no podía cumplir con el requerimiento que me estaban haciendo los demandados, y me ponía en una posición ética muy difícil ante el Tribunal y ante los compañeros [sic] abogados de los demandados.[29]

Del testimonio del propio peticionario, no surge con claridad qué necesitaba de la recurrida ni cómo su alegada falta de cooperación le imposibilitaba continuar con su

---

[27] Íd., pág. 141.

[28] Íd., pág. 273.

[29] Íd., pág. 274.

representación legal. Ello resulta aún más evidente si consideramos que a preguntas de su propio abogado, el peticionario indicó que para el mes de enero de 2011, fecha en la que renunció por primera vez, el caso estaba adelantado. En cuanto a este particular, el peticionario específicamente indicó lo siguiente:

> Lcdo. Blanco: Yo entiendo que estaba igual de adelantado que en el Tribunal Federa[l], las deposiciones. Todas las deposiciones que se tomaron en el caso del Tribunal Federal, se tomaron en español, much[o]s de los documentos de los, del descubrimiento escrito se hizo en español, todos los récords médicos estaban principalmente en español. Los informes periciales estaban en español, o sea que era muy fácil adoptar toda esa evidencia al pleito de aquí ante la, en la Corte de Primera Instancia de Guayama. **Por lo tanto, yo entiendo que estábamos en el mismo estatus que en el Tribunal Federal, lo que faltaba era tomar las deposiciones de los peritos y entonces entrar en negociaciones de transacción o ver el juicio.**[30] (Énfasis suplido).

Aunque el peticionario sostuvo que la alegada falta de cooperación de la recurrida le impedía cumplir con el trámite ordinario del caso, este indicó inequívocamente que el caso estaba **"en el mismo estatus"** que el pleito federal –el cual se litigó por aproximadamente tres (3) años antes del desistimiento– y que solamente restaba deponer a los peritos para luego evaluar la posibilidad de transigir el pleito o celebrar la Vista en su Fondo. El testimonio del peticionario es contradictorio. A lo sumo, no nos permite concluir satisfactoriamente que la alegada falta de cooperación de la recurrida, en la etapa en la que se encontraba el caso, según expresó el propio peticionario, era imprescindible para la

---

[30] Íd., pág. 346.

consecución del mismo. Cabe destacar que el peticionario no alegó ni demostró que hubiera informado al foro de instancia sobre sus intentos infructuosos de comunicarse con su clienta. Tampoco alegó haber solicitado un término adicional para contestar la alegada solicitud de descubrimiento de prueba entretanto realizaba esfuerzos adicionales para lograr comunicarse con esta. En ese sentido, el peticionario descansó en que la recurrida no le contestó la misiva del 24 de marzo de 2011, a pesar de su apercibimiento, ni unas alegadas llamadas telefónicas realizadas por este y su secretaria. Empero, no demostró ni especificó mediante hechos concretos, apoyados en prueba admitida, cómo la alegada falta de cooperación de su clienta le impedía continuar el trámite ordinario del caso.

Por otro lado, la factura ofrecida en evidencia por el peticionario nos obliga a llegar a la misma conclusión. Este insinuó que la recurrida no cooperaba con su caso y que se le hacía difícil comunicarse con ella. No obstante, su factura demuestra todo lo contrario. Desde el mes de septiembre de 2010 -fecha en la que se diligenciaron los emplazamientos del pleito estatal- y el 24 de marzo de 2011 -fecha en la que apercibió a la recurrida que renunciaría de no comunicarse con él- se reunieron en seis (6) ocasiones distintas para un promedio de una (1) reunión por mes. Las reuniones, según

facturadas por el peticionario, duraron un promedio de una (1) hora con quince (15) minutos.[31]

Más revelador aún, desde que el peticionario reasumió la representación de la recurrida tras haber renunciado por primera vez, se reunió con esta en tres (3) ocasiones: el 22 de febrero, el 4 de marzo y el 16 de marzo de 2011. Nótese que solamente habían transcurrido ocho (8) días desde la última reunión con la recurrida cuando el peticionario le envió la carta apercibiéndole que renunciaría a su representación legal si no se comunicaba con él. El peticionario no ofreció prueba alguna que nos permitiera concluir que la relación entre este y la recurrida hubiera estado deteriorándose. Particularmente, no ofreció prueba de discrepancias, diferencias ni de suceso alguno que hubiera ocurrido durante su última reunión, y que fuera de tal magnitud, que le imposibilitara continuar representando a la recurrida. Tampoco mencionó ni sugirió tan siquiera que la reunión hubiera sido fútil o infructuosa.

Si bien es cierto que la recurrida no lo contrainterrogó en cuanto a este particular, era sobre el peticionario que recaía la carga inicial de prueba. Era este quien tenía que aportar prueba sobre las razones particulares y los hechos concretos que lo motivaron a renunciar a la representación legal de la recurrida. Después de todo, el foro de instancia indicó en su Resolución del 13 de diciembre de 2012 que este

---

[31] Según la factura del peticionario, las últimas seis (6) reuniones de este con la recurrida duraron 1.25 horas, 1.50 horas, 1.75 horas, 0.50 hora, 1.25 horas y 1.25 horas, respectivamente. Véase: Íd., págs. 87-88.

sería uno de los factores que consideraría a la hora de fijar los honorarios de abogado a base de un *quantum meruit*.[32] Concluimos que, ante los hechos particulares del caso ante nos, el que un cliente no haya contestado una carta y unas llamadas telefónicas, sin más, no denota una falta de cooperación por parte de este que constituya justa causa para la renuncia de su abogado.[33] Por todo lo anterior, resolvemos que la renuncia del peticionario no estuvo justificada a los efectos de remunerarlo por el valor razonable de los servicios que prestó a la recurrida previo a su renuncia.

C.

Finalmente, resolvemos que el foro *a quo* actuó correctamente al eliminar los honorarios por temeridad concedidos por el foro de instancia.

Los honorarios por temeridad "tienen el propósito de sancionar al litigante perdidoso que por su temeridad, obstinación, contumacia e insistencia en una actitud frívola o desprovista de fundamento obliga a la otra parte a asumir innecesariamente las molestias, gastos, trabajo e inconveniencias de un pleito". *Méndez v. Morales,* supra, pág. 40; *Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713, 718

---

[32] Íd., pág. 140.

[33] Reconocemos que en *Ausler v. Ramsey*, 73 Wash.App. 231, 238-239, 868 P.2d 877, 881-882 (1994), se resolvió que el que un cliente no haya contestado una sola carta no constituye un abandono de su causa de acción que justifique al abogado renunciar. Más aun cuando había otra evidencia de que entre estos había habido comunicación. En *Bell & Marra, pllc v. Sullivan,* 300 Mont. 530, 6 P.3d 965 (2000), se resolvió que no constituye justa causa para la renuncia que justifique compensar al abogado el que un cliente no conteste una carta en la que el abogado le advierte que de no firmar un nuevo pacto de honorarios de abogado renunciaría a la representación legal.

(1987). No constituye temeridad litigar un asunto cuando existe una discrepancia honesta en torno al derecho aplicable o cuando se trata de una cuestión novel, no resuelta por el Tribunal Supremo. *Soc. de Gananciales v. Royal Bank de P.R.,* 145 DPR 178, 209-210 (1998).

En el caso de autos, la recurrida no fue temeraria. Esta reconoció que adeudaba al peticionario una suma por concepto de gastos correspondientes al pleito federal en la Contestación a Demanda, en el Informe Sobre Conferencia Preliminar Entre Abogados y en su Moción Solicitando Sentencia Sumaria.[34] En cuanto a los honorarios de abogado reclamados por el peticionario, había una controversia genuina en cuanto a cómo debían interpretarse los Contratos que este había suscrito con la recurrida y qué efecto tendría el que no hubiera ocurrido la alegada novación extintiva. Tan es así que, aun cuando el foro de instancia resolvió que no hubo una novación, ordenó la celebración de una Vista Evidenciaria para examinar los honorarios de abogado a los que el peticionario en efecto tenía derecho, tomando en consideración varios factores sobre los cuales este venía obligado a pasar prueba.

III

Por todo lo anteriormente expuesto, se confirma la Sentencia recurrida. Debido a que el peticionario no acreditó la existencia de justa causa para su renuncia, la cual efectuó antes de haber culminado la gestión profesional para la cual fue contratado a base de un pacto de honorarios contingentes,

---

[34] Íd., págs. 100, 107, 118.

ni presentó prueba preponderante de los criterios que el foro primario esbozó en la Resolución del 13 de diciembre de 2012, este no tiene derecho a recibir compensación alguna por el valor razonable de los servicios que prestó previo a la renuncia. No obstante, tiene derecho a recobrar los gastos incurridos mas no reembolsados por la recurrida. Se devuelve el caso al foro de instancia para la continuación de los procedimientos consistentes con estos pronunciamientos.

Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Lcdo. Luis N. Blanco Matos<br><br>Peticionario<br><br>v.<br><br>Madeline Colón Mulero<br><br>Recurrida | | *Certiorari*<br><br><br>CC-2014-837 |

SENTENCIA

En San Juan, Puerto Rico, 23 de mayo de 2018.

Por todo lo anteriormente expuesto, se confirma la Sentencia recurrida. Debido a que el peticionario no acreditó la existencia de justa causa para su renuncia, la cual efectuó antes de haber culminado la gestión profesional para la cual fue contratado a base de un pacto de honorarios contingentes, ni presentó prueba preponderante de los criterios que el foro primario esbozó en la Resolución del 13 de diciembre de 2012, este no tiene derecho a recibir compensación alguna por el valor razonable de los servicios que prestó previo a la renuncia. No obstante, tiene derecho a recobrar los gastos incurridos mas no reembolsados por la recurrida. Se devuelve el caso al foro de instancia para la continuación de los procedimientos consistentes con estos pronunciamientos.

Lo acordó y manda el Tribunal y certifica la Secretaria del Tribunal Supremo Interina. El Juez Asociado señor Colón Pérez emitió una Opinión Disidente a la cual se unió el Juez Asociado señor Feliberti Cintrón. La Jueza Presidenta Oronoz Rodríguez no intervino. La Jueza Presidenta Interina señora Rodríguez Rodríguez no intervino.

Sonnya Isabel Ramos Zeno
Secretaria del Tribunal Supremo Interina

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis N. Blanco Matos

    Peticionario

         v.

                    Núm. CC-2014-837     *Certiorari*

Madeline Colón Mulero

    Recurrida

Opinión Disidente emitida por el Juez Asociado señor COLÓN PÉREZ a la que se une el Juez Asociado señor FELIBERTI CINTRÓN.

En San Juan, Puerto Rico 23 de mayo de 2018.

    Disentimos del curso de acción seguido por una mayoría de este Tribunal en el presente caso, toda vez que, si bien estamos de acuerdo con resolver que, en ausencia de un pacto de honorarios, un abogado o abogada que renuncia a la representación legal de su cliente, antes de culminar la gestión profesional para la cual fue contratado, tiene derecho a ser compensado por sus servicios a base de la doctrina de *quantum meruit,* no estamos de acuerdo con sujetar esa compensación a que el abogado o abogada demuestre que hubo justa causa para su renuncia en la vista que se celebre para dichos fines.

Y es que -- en virtud de lo dispuesto en nuestros Cánones de Ética Profesional, *infra* -- la determinación de justa causa para renuncia a la representación legal de un cliente, es una determinación que tiene que haber realizado el tribunal previo a celebrar una vista de *quantum meruit*. Es decir, al momento de atender la moción de renuncia de representación legal, que es deber ético de todo abogado presentar antes de renunciar a la representación legal de un cliente.

**A juicio nuestro, el requerir en la vista de *quantum meruit* que el abogado o abogada demuestre que hubo justa causa para la renuncia a la representación legal de determinado cliente -- hecho que ya tuvo que ser establecido al momento de atender la moción de renuncia de representación legal -- además de desnaturalizar el propósito de dicha vista, podría prestarse para determinaciones inconsistentes que en nada abonan a la consecución de la justicia.** La vista de *quantum meruit* en este tipo de caso -- y similar a como ocurre cuando un abogado o abogada renuncia a la representación legal de un cliente a pedidos de éste -- debe limitarse, sin más, a determinar el derecho, si alguno, que tiene el o la profesional del derecho de reclamar el valor razonable de los servicios que ha prestado. *Pérez v. Col. Cirujanos Dentistas de P.R.*, 131 DPR (1992); *Ex parte Capó y Rivera*, 59 DPR 899 (1942); *Ruiz de Val v. Morales*, 43 DPR 283 (1932). Veamos.

I.

En el presente caso, el 20 de noviembre de 2006, el Lcdo. Luis N. Blanco Matos (en adelante, "licenciado Blanco Matos") firmó un contrato de servicios profesionales (en adelante, "primer contrato") con la señora Madeline Colón Mulero (en adelante, señora Colón Mulero), para que el primero la representara legalmente a ella, y a sus dos hijos menores de edad, en un pleito sobre daños y perjuicios instado en la Corte de Distrito de los Estados Unidos para el Distrito de Puerto Rico. Posteriormente, el 18 de mayo de 2009, la señora Colón Mulero desistió voluntariamente de dicho pleito y, el 14 de mayo de 2010, presentó una demanda en el Tribunal de Primera Instancia con los mismos reclamos que realizó en el foro federal.

Así las cosas, el licenciado Blanco Matos le solicitó a la señora Colón Mulero el reembolso de los gastos en los que había incurrido durante el trámite en el pleito federal, ascendientes a $11,474.39. Dos días después de tal requerimiento, éste solicitó la renuncia a la representación legal de la señora Colón Mulero ante el foro primario, alegando que existían diferencias irreconciliables entre ambos.

Ahora bien, no empece a lo anterior, el 1 de febrero de 2011, el licenciado Blanco Matos y la señora Colón Mulero se reunieron y suscribieron un segundo contrato de servicios profesionales (en adelante, "segundo contrato"). En virtud

de este último, el licenciado Blanco Matos asumió la representación de la señora Colón Mulero y sus dos hijos menores de edad en el pleito instado en el foro estatal.

Tras varios trámites procesales no necesarios aquí pormenorizar, el 2 de mayo de 2011, el licenciado Blanco Matos le requirió a la señora Colón Mulero el pago de $46,915.64 por concepto de honorarios de abogado, más ciertos gastos incurridos y no reembolsados. El letrado le concedió a esta última un término de siete (7) días para satisfacer la suma reclamada. La señora Colón Mulero no cumplió.

Así pues, el licenciado Blanco Matos presentó, ante el Tribunal de Primera Instancia, una reclamación por incumplimiento de contrato y cobro de dinero en contra de la señora Colón Mulero, la cual desembocó en el caso ante este Tribunal. En esencia, el abogado solicitó el pago de varias sumas de dinero, por concepto de gastos de litigio, de honorarios por servicios prestados, y de honorarios periciales. Por su parte, la señora Colón Mulero presentó una solicitud de sentencia sumaria, arguyendo que el licenciado Blanco Matos sólo tenía derecho a ser remunerado en virtud del segundo contrato, puesto que al otorgarse el mismo se realizó una novación extintiva.

Tras celebrar una vista evidenciaria para determinar a qué honorarios tendría derecho el licenciado Blanco Matos, y bajo la doctrina de *quantum meruit* (dado que el foro primario entendió que los contratos no establecían cómo habría de

realizarse el pago de honorarios en caso de que el licenciado renunciara), el Tribunal de Primera Instancia dictó sentencia en la cual declaró con lugar la demanda invocada por el referido letrado. En consecuencia, condenó a la señora Colón Mulero al pago de $35,941.25 por concepto de honorarios profesionales, y a otra suma de dinero por gastos y honorarios de abogado por temeridad.

Insatisfecho, el licenciado Blanco Matos acudió al Tribunal de Apelaciones. Tras evaluar los planteamientos de las partes, dicho foro modificó el dictamen emitido por el Tribunal de Primera Instancia. Al así hacerlo, anuló ambos contratos, por entender que eran contrarios a la Ley Núm. 9 de 8 de agosto de 1974, 4 LPRA sec. 742. Cónsono con ello, sostuvo que la única cuantía a la que tenía derecho el mencionado licenciado era aquella por concepto de gastos incurridos y no reembolsados.

Aún inconforme con dicho proceder, el licenciado Blanco Matos acude ante nos. En síntesis, señala que el Tribunal de Apelaciones erró al: (1) declarar nulo el Contrato de Servicios Profesionales; (2) descartar la toma de conocimiento judicial; (3) descartar la factura enviada a la recurrida; (4) no aplicar la figura del *quantum meruit*, y (5) revocar la concesión de honorarios de abogado que el Tribunal de Primera Instancia concedió a favor de la señora Colón Mulero.

Examinados los planteamientos de ambas partes, el 30 de enero de 2015, por encontrarnos igualmente divididos, este Tribunal confirmó el dictamen emitido por el foro apelativo intermedio. Posteriormente, el 1 de junio de 2015, ante una solicitud de reconsideración, decidimos expedir el auto solicitado.

Así pues, al atender los asuntos traídos ante nuestra consideración, en la Opinión del Tribunal se discute correctamente el alcance de la figura de los contratos de servicios profesionales en nuestro ordenamiento jurídico y se esboza lo relacionado al asunto de la fijación de honorarios de abogado en dichos tipos de acuerdos. Además, se explican los límites impuestos a tal fijación por virtud de la Ley Núm. 9 de 8 de agosto de 1974, *supra*. Luego, se estima que de una lectura de ambos contratos surge que el licenciado Blanco Matos pactó con su clienta en contravención a lo establecido en ley, ya que acordó el pago de honorarios a un 33% por cualquier suma de dinero que se recibiera, ya fuera a nombre de la señora Colón Mulero o de los menores de edad. Ello, a pesar de existir una prohibición expresa en ley a que se pacte una cantidad de honorarios mayor al 25% cuando se trata de representación a menores de edad. Así pues, acertadamente se concluye que los contratos que nos ocupan eran nulos.

Ahora bien, establecido lo anterior, en la Opinión del Tribunal se procede a discutir la doctrina de *quantum meruit*

y, particularmente, los parámetros existentes en diversos estados de los Estados Unidos para aplicar tal doctrina. Específicamente, se expone cómo en dichas jurisdicciones se ha determinado que para que un abogado o abogada pueda reclamar el pago de honorarios bajo la doctrina de *quantum meruit* -- luego de renunciar a la representación legal para la cual fue contratado -- debe existir el elemento de justa causa como motivo de tal renuncia. Expuestas las virtudes de esa norma, una mayoría de este Tribunal procede, sin más, a adoptar la misma en nuestra jurisdicción y, en consecuencia, se resuelve que, **en ausencia de un pacto de honorarios, el abogado o abogada que renuncia a la representación legal antes de culminar la gestión para la cual fue contratado, tiene derecho a ser compensado por sus servicios a base de *quantum meruit*, siempre y cuando demuestre que hubo justa causa para la renuncia.**

Cónsono con lo anterior, al aplicar el derecho a los hechos en controversia, se concluye que la renuncia del licenciado Blanco Matos no estuvo justificada bajo la doctrina desarrollada. Por ello, se confirma la sentencia del foro apelativo intermedio y no se concede una partida de honorarios profesionales, sino que se limita a la partida en concepto de gastos incurridos y no cobrados.

Como ya mencionamos, si bien estamos de acuerdo con resolver que, en ausencia de un pacto de honorarios, un abogado o abogada que renuncia a la representación legal de

su cliente, antes de culminar la gestión profesional para la cual fue contratado, tiene derecho a ser compensado por sus servicios a base de la doctrina de *quantum meruit,* no estamos de acuerdo con sujetar esa compensación a que el abogado o abogada demuestre que hubo justa causa para su renuncia. Ello, toda vez que -- en virtud de lo dispuesto en nuestros Cánones de Ética Profesional -- esto es una determinación que tuvo que haber realizado el tribunal sentenciador previo a celebrar la vista de *quantum meruit.* Es decir, al momento de atender la moción de renuncia de representación legal, que es deber ético de todo abogado presentar antes de renunciar a la representación legal de un cliente.

Como bien reconoce la Opinión del Tribunal, en su nota al calce número 23, debemos recordar que en nuestro ordenamiento existen varias disposiciones -- particularmente en nuestro Código de Ética Profesional, 4 LPRA Ap. XI -- que imponen ciertas obligaciones al momento de renunciar a la representación legal de un cliente, y que, precisamente, requieren que al hacerlo se demuestre que existe una razón justificada para ello. En particular, el Canon 20 del Código de Ética Profesional, *supra,* dispone que "[c]uando el abogado haya comparecido ante un tribunal en representación de un cliente no puede ni debe renunciar la representación profesional de su cliente sin obtener primero el permiso del tribunal y debe solicitarlo solamente cuando exista **una razón**

**justificada** e imprevista para ello". (Énfasis suplido) Canon 20 del Código de Ética Profesional, *supra*.

Al respecto, este Tribunal ha reconocido que para que la renuncia sea efectiva, **requiere la aprobación expresa del tribunal** y el abogado no queda automáticamente desvinculado de su responsabilidad para con el cliente con la mera presentación de la solicitud de renuncia. *Matos v. Metropolitan Marble Corp.*, 104 DPR 122, 125 (1975); *In re Acosta Grubb*, 119 DPR 591 (1987); *In re Díaz Nieves*, 189 DPR 1000 (2013); *In re Villalba Ojeda*, 193 DPR 966 (2015).

Así las cosas, al decidir si se acepta o no una moción de renuncia a la representación legal, el tribunal sentenciador debe hacer un minucioso y detenido análisis basado en diversas consideraciones, incluyendo garantizar la solución justa y rápida de las controversias e impedir que un litigante quede sin representación legal en etapas importantes del proceso por razones triviales. S. Steidel Figueroa, *Ética para juristas: Ética del abogado y responsabilidad disciplinaria*, 1ra ed., Ed. Situm, pág. 315 (2016). Además, dicho foro deberá evaluar las razones presentadas por el abogado o abogada en la misma, tomando en cuenta los mejores intereses del cliente. Por ello, el abogado o abogada "[s]ólo quedará relevado de esta obligación cuando discrepancias irreconciliables de criterio con el cliente relativas a la defensa del caso, o insalvable conflicto personal o fricción entre el cliente y el abogado

justifiquen la renuncia de éste ante el tribunal para que le sustituya otro abogado". *In re Coll*, 101 DPR 799, 802 (1973). *Véanse*, además, *In re Manzano Velázquez*, 144 DPR 84, 88 (1997*); In re Díaz Alonso*, 115 DPR 755, 763 (1984). Como es sabido, a pesar de que el Tribunal tiene amplia discreción para conceder o denegar una solicitud de renuncia a la representación legal, esta no es una facultad que pueda ejercerse livianamente.

Siendo ello así, y toda vez que el tribunal sentenciador debe hacer un análisis de justa causa para decidir si acepta o deniega una solicitud de renuncia de representación legal, entendemos que no hay razón para requerir **por segunda ocasión** un requisito similar al momento de determinar si el abogado o abogada que renuncia, tiene derecho a ser compensado, a base de *quantum meruit*, por el trabajo realizado hasta ese momento. Adoptar esta norma, sin más, implicaría establecer la presunción de que cuando un abogado o abogada termina la relación abogado-cliente lo hace por motivaciones no justificadas y con indiferencia hacia los intereses de su cliente, aun cuando el Tribunal -- previamente -- tuvo a bien aceptar su renuncia. Ello, en nuestra opinión, no tiene cabida en nuestro ordenamiento jurídico.

Cabe señalar, además, que la jurisprudencia estatal estadounidense en la que se apoya la adopción de esta norma en nuestro ordenamiento, se ha discutido y aplicado, específicamente, en el contexto de la existencia de un pacto

de honorarios contingentes entre el cliente y el abogado o abogada que renuncia. *Véase* Opinión del Tribunal, págs. 20-23. Sin embargo, la norma que establece este Tribunal aplica indistintamente a todos los casos en que no exista un pacto de honorarios de abogado por escrito. Es menester señalar que, aunque el Canon 24 del Código de Ética Profesional, *supra*, dispone que "*es **deseable** que se llegue a un acuerdo sobre los honorarios a ser cobrados por el abogado al inicio de la relación profesional y que dicho acuerdo sea reducido a escrito*" (Énfasis suplido), esto no significa que, ante la ausencia de un pacto de honorarios por escrito, el abogado o abogada no tenga derecho alguno a ser remunerado por el trabajo que demuestre haber realizado.

**En fin, si ya exigimos demostrar justa causa como condición para aceptar la renuncia de un abogado o abogada a la representación legal de un cliente, -- acto que, en el caso que nos ocupa, se llevó a cabo previo a reclamar honorarios adeudados -- ¿por qué exigir, por segunda ocasión, similar requerimiento en la vista de *quantum meruit*? ¿Para qué?**

Como señalamos anteriormente, el requerir nuevamente, en la vista de *quantum meruit*, que el abogado o abogada demuestre que hubo justa causa para la renuncia a la representación legal de determinado cliente -- hecho que ya tuvo que ser establecido al momento de atender la moción de renuncia de representación legal -- además de desnaturalizar

el propósito de dicha vista, podría prestarse para determinaciones inconsistentes que en nada abonan a la consecución de la justicia. **La vista de *quantum meruit* en este tipo de caso -- y similar a como ocurre cuando un abogado o abogada renuncia a la representación legal de un cliente a pedidos de éste -- debe limitarse, sin más, a determinar el derecho, si alguno, que tiene el o la profesional del derecho a reclamar el valor razonable de los servicios que ha prestado.** *Pérez v. Col. Cirujanos Dentistas de P.R.*, *supra*; *Ex parte Capó y Rivera*, *supra*; *Ruiz de Val v. Morales*, *supra*. Como bien se señala en las páginas 18 y 19 de la Opinión del Tribunal,

> … [e]n esta acción de cobro de dinero el peso de la prueba recae sobre el abogado. *Colón v. All Amer. Life & Cas. Co.*, supra, pág. 777. Es este quien alega tener derecho a ser remunerado y quien perdería todo derecho a ser compensado de no presentarse evidencia alguna. 32 LPRA Ap. VI, R.110 (a), (b). Por tal razón, le corresponde al letrado presentar prueba, sea directa o circunstancial, sobre: (1) las gestiones profesionales que alegadamente realizó a beneficio de su cliente; (2) las horas o fracción de tiempo que le dedicó a cada una de dichas gestiones y (3) el valor razonable de las horas dedicadas. Véase: *Colón v. All Amer. Life & Cas. Co.*, supra.

> Evaluada la prueba, los tribunales deben fijar los honorarios a los que tenga derecho el reclamante y evaluar su razonabilidad tomando en consideración, *inter alia,* los factores enumerados en el Canon 24 del Código de Ética Profesional, *supra,* entiéndase:

> > (1) el tiempo y trabajo requeridos, la novedad y dificultad de las cuestiones envueltas y la habilidad que requiere conducir propiamente el caso;

(2) si el aceptar la representación del caso en cuestión ha de impedir al abogado que se haga cargo de otros casos que probablemente han de surgir del mismo asunto, y en los cuales existe una razonable expectativa de que de lo contrario sus servicios serán solicitados o que tal representación implique la pérdida de otros asuntos extraños al caso en cuestión o el antagonismo con otros clientes;

(3) los honorarios que acostumbradamente se cobran en el distrito judicial por servicios similares;

(4) la cuantía envuelta en el litigio y los beneficios que ha de derivar el cliente de los servicios del abogado;

(5) la contingencia o certeza de la compensación y

(6) la naturaleza de la gestión profesional, si es puramente casual o para un cliente constante.

Por último, precisa señalar que lo expresado anteriormente no es óbice para que una persona pueda iniciar un proceso disciplinario en contra de un abogado o abogada que ha faltado a sus responsabilidades éticas, de ameritarlo la situación o caso particular. No olvidemos que nuestro ordenamiento deontológico no está desprovisto de remedios para lidiar con los casos particulares en que el abogado o abogada falta a sus deberes para con su cliente, ni mecanismos para desalentar este tipo de conducta. *Véanse* Canon 18 de los de Ética Profesional, *supra* (Competencia del abogado y consejo al cliente); Canon 20 de los de Ética Profesional, *supra* (Renuncia de representación legal); Canon

24 de los de Ética Profesional, *supra* (Fijación de honorarios); Canon 25 de los de Ética Profesional, *supra* (Demandas contra clientes por honorarios). *Véanse, además, In re Vélez Lugo*, 180 DPR 987 (2011); *In re Rodríguez Mercado*, 165 DPR 630 (2005); *In re Torres Torregosa*, 149 DPR 127 (1999); *In re Acosta Grubb*, *supra*; *In re Siverio Orta*, 117 DPR 14 (1986); *In re Ávila, Jr.*, 109 DPR 440 (1980).

## II.

Es, pues, por los fundamentos antes expuestos que disentimos del proceder de una mayoría de este Tribunal en el día de hoy.

Ángel Colón Pérez
Juez Asociado